**In re Elizabeth F. WILSON Revocable Trust,**

**Fred Monroe Wilson, Appellant– Respondent,**

v.

**Marcia Wilson Barker, Carol Perrine, Nicholas Barker, Christopher Barker, and Sarah Barker, Appellees–Petitioners.**

No. 29A02–0910–CV–1004.

Court of Appeals of Indiana.

July 27, 2010.

Rehearing Denied Sept. 23, 2010.

Jay Curts, Blake N. Shelby, Coots, Henke & Wheeler, P.C., Carmel, IN, Attorneys for Appellant.

Alexander P. Pinegar, Church, Church, Hittle & Antrim, Noblesville, IN, Attorney for Appellees.

## OPINION

BAKER, Chief Judge.

The trust at issue herein held certain real estate that the settlor intended to be sold, with the proceeds to be distributed to the beneficiaries. For a time, the trustee delayed selling the real estate for valid reasons. He continued to delay to sell the property, however, until over a year past the point at which those reasons no longer existed. His inaction constituted a breach of fiduciary duty. His breach may have caused the corpus of the trust to suffer significant financial harm, and his general reluctance and/or refusal to communicate with the beneficiaries forced them to resort to litigation to find that out. Under these circumstances, we find that the trial court did not err by ordering the trustee to pay the beneficiaries' attorney fees, by reducing the requested trustee fees, or by reducing the amount of the trustee's attorney fees to be borne by the trust.

Appellant-respondent Fred Monroe Wilson (Trustee) appeals the trial court's order entering judgment in favor of appellees-petitioners Marcia Wilson Barker (Marcia), Carol Perrine (Carol), Nicholas Barker (Nicholas), Christopher Barker (Christopher), and Sarah Barker (Sarah) (collectively, the Objecting Beneficiaries) sustaining the Objecting Beneficiaries' objections to the Trustee's final accounting. The Trustee argues that the trial court erred by (1) finding that the Trustee committed multiple breaches of fiduciary duty; (2) ordering the Trustee to pay the attorney fees of the Objecting Beneficiaries; (3) reducing the fiduciary fees requested by the Trustee from $140,000 to $75,000; and (4) ordering that a portion of the Trustee's

attorney fees be paid by the Trustee personally.

We find that the Trustee breached duties owed to the Objecting Beneficiaries and that the trial court properly ordered the Trustee to pay the Objecting Beneficiaries' attorney fees, reduced the Trustee's requested fiduciary fees, and ordered that the Trust only be responsible for a portion of the Trustee's attorney fees. We also find, however, that it was error to order that the Trustee bear the remaining portion of his attorney fees personally. Therefore, we affirm in part and reverse in part.

## FACTS [1]

On May 15, 1997, Elizabeth F. Wilson executed a Revocable Trust (the Trust). Elizabeth's three children—the Trustee, Marcia, and Carol—are the Majority Beneficiaries of the Trust, receiving a combined 89.75% interest therein. Elizabeth's nine grandchildren, including Nicholas, Christopher, and Sarah, share the remaining 11.25% interest equally. The Trustee was Co-Trustee with Elizabeth until she died on July 31, 2005, at which time he became the sole Trustee.

### The Property

At the time of Elizabeth's death, the Trust held the following assets:

(1) tangible personal property, the distribution of which was governed by a list that had been prepared by Elizabeth and incorporated into the Trust;

(2) a checking account and an investment account; and

(3) an 82.795% ownership interest as a member of Wilson–Hussey Lane, LLC (the LLC).[2]

The LLC's primary asset was approximately 17.5 acres of real estate located in Carmel (the Real Estate). The Trustee became the Manager of the LLC at the time of Elizabeth's death.

At the time of Elizabeth's death, the Majority Beneficiaries also owned, as tenants in common, Elizabeth's former residence in Carmel (the TIC Property), which is adjacent to the Real Estate. The TIC Property held, among other things, the tangible personal property included in the Trust.

### The Loans

Almost immediately after Elizabeth's death, the Trustee was faced with issues regarding the payment of real estate taxes and other necessary expenses on behalf of the LLC and the TIC Property. During her lifetime, Elizabeth had personally paid these obligations. The Trustee presented Marcia and Carol with options as to how to handle those expenses but did not receive a response. The Trustee was concerned about protecting the Trust's tangible personal property located in the TIC Property and the Trust's interest in the Real Estate owned by the LLC. Accordingly, the Trustee facilitated the payment of TIC Property and LLC expenses from the Trust's assets and accounted for and verified those payments as loans totaling over $100,000 made by the Trust. Although the Trustee had no promissory notes documenting the loans, he accounted for all payments in his Final Accounting.

---

**1.** We held oral argument in Indianapolis on July 13, 2010. We thank counsel for their excellent written and oral presentations.

**2.** The Majority Beneficiaries owned, individually and equally, the remaining 17.205% ownership interest in the LLC, having received those assets from Elizabeth during her lifetime.

## The Fire

The Trust's tangible personal property was sorted and inventoried by the Trustee to facilitate distribution to the Majority Beneficiaries pursuant to Elizabeth's list. The Trustee also obtained an appraisal of the property. On November 17, 2005, the Majority Beneficiaries met and the majority of the Trust's tangible personal property was distributed at that time.

On January 23, 2006, the Objecting Beneficiaries filed a Petition for a Trust Accounting.

On March 16, 2007, the TIC Property and remaining undistributed portion of the Trust's personal property were destroyed as the result of a fire. The Majority Beneficiaries submitted an insurance claim and received insurance proceeds for the damage to the residence and the property therein.

## The Real Estate

The Trust's primary asset was the Real Estate, and the Majority Beneficiaries desired, ultimately, to sell the Real Estate and the adjacent TIC Property as a single parcel. Pursuant to his fiduciary duty to handle all transfer tax matters arising from the Trust's assets, the Trustee obtained an appraisal of the Real Estate[3] and a valuation opinion from a certified valuation analyst to propose a discounted fair market value of the Trust's ownership interest in the LLC, primarily due to the lack of marketability in that interest.

The Trustee was concerned that the Trust would have to pay an additional 47% federal estate tax on proceeds received in excess of the appraisal value if the Real Estate was sold prematurely. Additionally, the Trustee was counseled not to sell the Real Estate before the insurance claim stemming from the fire at the TIC Property was resolved.[4] Therefore, the Trustee decided not to distribute the Trust's LLC units to the beneficiaries or market the Real Estate for sale until the audit review of the Trust's federal estate tax and Indiana inheritance tax returns were finalized and the insurance claims were resolved. The IRS issued a clearance letter in January 2007, the Indiana Department of Revenue issued a clearance letter in May 2007, and the insurance claim was satisfied in August 2007. Shortly thereafter, the Majority Beneficiaries met to discuss the sale of the Real Estate, at which time the Trustee agreed that he would begin to compile marketing packets and begin the process of selling the Real Estate. The Trustee did not begin marketing the Real Estate for sale until July 2008, a few weeks before a scheduled July 29, 2008, hearing on the Objecting Beneficiaries' objections to the Final Accounting.

## The Final Accounting

On March 4, 2008, the Trustee filed the Final Accounting and in March and April 2008, the Objecting Beneficiaries filed objections to the Accounting. Following a hearing that concluded on September 19, 2008, the parties stipulated that the Final Accounting met the burden required under Indiana Code section 30–4–5–13(a), meaning that the burden of persuasion regarding the alleged instances of impropriety shifted to the Objecting Beneficiaries. On July 6, 2009, the trial court entered an order sustaining many of the Objecting

---

3. The Real Estate was appraised at approximately $164,000 per acre in 2005.

4. If the Real Estate and TIC Property were sold together before resolution of the insurance claim, the Trustee was concerned that the insurance company would conclude that the residence located on the TIC Property added no value to the sale of that Real Estate, thereby reducing or negating the potential insurance proceeds due to the Majority Beneficiaries.

Beneficiaries' objections. Among other things, the trial court found and concluded as follows:

- The Trustee's use of Trust funds to pay TIC Property expenses constituted improper commingling of assets and was a breach of trust. The trial court specifically found fault with the lack of documentation that the payments made from the Trust were loans.
- The Trustee's decision to loan Trust Assets to the TIC Property and the LLC without documenting the loans violated the Statute of Frauds.
- The loans to the TIC Property and the LLC without approval of the beneficiaries or a court order constituted self-dealing and improper conflict of interest, resulting in a breach of trust.
- The delay in the sale of the Real Estate constituted a violation of the Trustee's duty to preserve trust property and make trust property productive.

Appellant's App. p. 11–25.

Having found those breaches of duty, the trial court ordered the Trustee to pay the attorney fees of the Objecting Beneficiaries, which totaled $50,375. Although the Trustee requested trustee fees totaling $140,000, the trial court ordered that he receive only $75,000 because of the multiple breaches of duty. Furthermore, much of the time for which he requested payment was spent defending against the objections, which he precipitated and which would not otherwise have been necessary to administer the trust. Finally, the trial court found that the Trustee's attorney fees, totaling $280,000, were reasonable but that the Estate should not have to bear the entire burden of those fees because the Trustee's failure to communicate with his family caused much of the litigation, and the fees would not otherwise have been necessary to administer the trust.

Thus, the trial court ordered that the Estate pay $175,000 of the Trustee's attorney fees, with the remainder to be borne by the Trustee personally. The Trustee now appeals.

## DISCUSSION AND DECISION

### I. Standard of Review

When, as here, the trial court has entered an order containing findings of fact and conclusions of law, we apply a two-step review. First, we consider whether the evidence supports the findings, and second, whether the findings support the judgment. *Hardy v. Hardy*, 910 N.E.2d 851, 855 (Ind.Ct.App.2009). We will neither reweigh the evidence nor assess witness credibility, considering only the evidence most favorable to the judgment. *Id.* We will set aside the trial court's findings and conclusions only if they are clearly erroneous, that is, if the record contains no facts or inferences supporting them. *Id.* We apply a de novo standard of review to conclusions of law. *Id.*

### II. Breach of Trustee's Duties

A trust is "a fiduciary relationship between a person who, as trustee, holds title to property and another person for whom, as beneficiary, the title is held." Ind.Code § 30–4–1–1(a). A breach of trust is "a violation by the trustee of any duty that is owed to the settlor or beneficiary." Ind. Code § 30–4–1–2(4).

 Generally, a trustee bears the burden of justifying the propriety of items in a trust account. *Matter of Willey's Trust*, 433 N.E.2d 1191, 1193 (Ind.Ct.App.1982). But when, as here, a trustee files specific accounts and makes a prima facie showing that the accounts are proper, the burden of persuasion shifts to the beneficiaries to show specific instances of impropriety. *Id.* at 1193–94.

Solely for argument's sake, we will assume that the Trustee is correct that his decision to loan money from the Trust to the LLC and the TIC Property was not a breach of duty. We will turn immediately, therefore, to the trial court's conclusion that the Trustee's decision to delay the sale of the Real Estate breached his duties to preserve the trust property and make the trust property productive for both the income and remainder beneficiaries.

■ The record here reveals that the Trustee elected to wait to sell the Real Estate until he received clearance letters from federal and state government agencies in an effort to avoid incurring substantial additional transfer tax liability. Furthermore, he elected to wait to sell the Real Estate until the insurance claim on the TIC Property was processed in an effort to ensure that the Majority Beneficiaries received the full amount of their claims. We find that these actions were prudently taken, well considered, and taken upon the advice of counsel.

That said, we agree with the trial court's implicit conclusion that while the Trustee was waiting for the clearance letters and the settlement of the insurance claim, he should have begun the process of selling the property by, among other things, taking steps to find potential buyers and putting together marketing information about the property. Even more compelling, the insurance claim had been settled and all clearance letters received by August 2007, but it was not until July 2008, more than a full year after receiving the last tax clearance letter and shortly before a scheduled court hearing, that the Trustee began marketing the Real Estate for sale. He could point to no significant steps he had taken during the intervening months to prepare to sell the Real Estate.

Although the Trustee is correct that the Trust does not mandate the Trustee to sell any asset, it is evident from the way in which the Trust is structured that Elizabeth intended that the Trust assets be relatively quickly distributed and/or sold. Moreover, the Objecting Beneficiaries made it abundantly clear to the Trustee starting in August 2005 that they desired a quick wrap-up of the Trust and hoped that the Real Estate would be sold in a timely fashion. Although we find that the Trustee's decision to delay the sale until after the tax clearance letters were received and the insurance claim was settled was prudent and did not constitute a breach of fiduciary duty, we agree with the trial court's conclusion that his failure to prepare the Real Estate for sale during the waiting period and the extra delay of over one year after the clearance letters were received was a breach of his fiduciary duties to comply with the settlor's intent and to preserve the value of the Trust property.

The Trustee notes that the Trust does not actually own the Real Estate. Instead, it owns a majority interest in the LLC, a separate entity, which owns the Real Estate. The Trustee argues that he could not have a duty to sell an asset the Trust does not actually own. We find this to be a distinction without a difference. He is both the Trustee of the Trust and the Manager of the LLC. Regardless of which proverbial hat he was wearing, it was his responsibility to sell the Real Estate or, at least, the Trust's interest in the Real Estate. Thus, we do not find this argument to be compelling.

### III. Damages

■ Although the trial court did not award any specific damages to the Objecting Beneficiaries based upon the Trustee's breaches, it ordered the Trustee to pay the Objecting Beneficiaries' attorney fees, reduced the fees requested by the Trustee, and ordered the Trustee to pay a portion

of his attorney fees personally. The Trustee argues that all of these actions were erroneous.

■ If a trustee commits a breach of trust, the trustee is liable to the beneficiaries for:

(1) any loss or depreciation in the value of the trust property as a result of the breach;

(2) any profit made by the trustee through the breach;

(3) any reasonable profit which would have accrued on the trust property in the absence of a breach; and

(4) reasonable attorney's fees incurred by the beneficiary in bringing an action on the breach.

I.C. § 30–4–3–11(b). If the trust is not harmed by any breach of trust committed by the trustee, the beneficiaries may not complain of the breach of trust. *Gavin v. Miller*, 222 Ind. 459, 467, 54 N.E.2d 277, 280 (1944).

Here, the trial court found that the Objecting Beneficiaries failed to offer evidence establishing that they suffered a financial harm—i.e., that the Real Estate depreciated in value during the delay—as a result of the Trustee's breach. The only evidence in that regard came from the testimony of Marcia, who is not an expert but testified that in her personal opinion, the real estate market in Indiana was not as good as it had been three years earlier. The trial court determined that Marcia's testimony was insufficient to establish damages, and we agree with that conclusion.

■ Although we conclude that the Trust corpus, itself, suffered no harm as a result of the Trustee's breach, the Trustee's actions, including a general reticence or refusal to communicate with the Objecting Beneficiaries, compelled the Objecting Beneficiaries to solve these problems in court. Put another way, the Trustee's behavior forced the Objecting Beneficiaries to enlist the aid of attorneys and a trial court to determine that, in fact, they had not sustained financial harm as a result of his inaction. Under these circumstances, we find that the trial court did not err by ordering the Trustee to pay the Objecting Beneficiaries' attorney fees or by reducing the fees the Trustee requested based upon the breach of duty.

■ As for the Trustee's attorney fees, we likewise find that the trial court did not err by ordering that the Trust pay only $175,000 of those fees. To the extent that the trial court ordered the Trustee to personally pay the remainder of his attorney fees, however, we disagree. Neither the trial court nor we have jurisdiction over the relationship between the Trustee individually and his attorneys. The way in which the Trustee's attorneys choose to collect the remainder of their fees, if at all, is not at issue in this proceeding, and we reverse the trial court's order to the extent that it orders the Trustee to bear that burden personally.

The judgment of the trial court is affirmed in part and reversed in part.

DARDEN, J., and CRONE, J., concur.