In the Matter of the Trust of Harrison EITELJORG,

Roger Eiteljorg and John Lienhart, Appellants–Defendants,

v.

Harrison Eiteljorg II and Jack M. Eiteljorg, Appellees– Plaintiffs.

No. 49A02–1005–TR–485.

Court of Appeals of Indiana.

June 27, 2011.

Richard A. Smikle, Brian J. Paul, Ice Miller LLP, Indianapolis, IN, Attorneys for Appellants.

Vicki L. Anderson, Mark S. Alderfer, Joseph M. Hendel, Hackman Hulett & Cracraft, LLP, Indianapolis, IN, Attorneys for Appellees.

## OPINION

VAIDIK, Judge.

### Case Summary

This is a probate dispute between trustees and beneficiaries. The beneficiaries initiated suit against the trustees alleging a breach of duty to administer the subject trust according to its terms, specifically for failing to distribute a portion of the trust corpus in a timely manner. The probate court found the trustees liable and awarded damages and attorney's fees to the beneficiaries. The trustees appeal, claiming that the probate court erred in finding a breach of duty and erred in assessing damages and attorney's fees. We find sufficient evidence to sustain the probate court's finding on liability, as the trustees knew there was property available in the trust for distribution yet declined to timely distribute it to the beneficiaries. However, we find that the probate court's assessment of damages and attorney's fees is erroneous. We remand for a reevaluation of compensatory damages and a reduction in attorney's fees.

### Facts and Procedural History

Harrison Eiteljorg established a testamentary trust effective upon his death in 1997. His second wife Sonja was designated sole beneficiary. Sons Harrison Eiteljorg II ("Nick") and Jack M. Eiteljorg were the remainder beneficiaries. The trust ultimately had three cotrustees: Nick, Harrison's stepson Roger, and accountant John Lienhart. Article I of the trust agreement provided:

*Clause 2.* The Trust Property (and any accumulated income therefrom) remaining at the death of ... Settlor's Spouse, ... shall be divided into equal shares, one (1) share for each of Settlor's sons....

*Clause 3.* Upon (or promptly after) the allocation specified in Clause 2 hereof, the Trustee shall distribute, convey, transfer and deliver, as applicable, to the then-living sons of Settlor ... absolutely and free of all trusts, the shares (or portions of a share) of the Trust Property (and any income accumulated therefrom ...) allocated to such sons or issue under such Clause 2, subject to the Trustee's retaining an appropriate amount from each share (or portion of a share) to pay such share's (or portion's) part of any taxes....

Appellants' App. p. 351–52. Article III further obligated trustees to "act with reasonable care and prudence" in the trust's administration. *Id.* at 353.

Sonja died in July 2003. The trust property represented part of her estate and was therefore subject to federal estate tax. The trust remitted $6.2 million in taxes by September 2004. But because filing estate tax is a long and complex process, the trust's total tax liability remained unsettled and would not be cleared by the Internal Revenue Service until 2006.

Nick, Roger, John, and Jack met in October 2004 to discuss distribution of the trust property. At that time the trust consisted of about $6.5 million, including $3.2 million in liquid assets. Nick requested a distribution of $2 million total for him and Jack. John thought dispensing that much would be imprudent. By his accounting the trust might still owe upwards of $2 million in additional taxes. Roger

also opposed the distribution, as he was executor of Sonja's estate and would be responsible if the trust were left with insufficient liquidity. Roger and John suggested distributing a total of $1 million. Nick pressed for a greater distribution, but John told Nick that "nothing will satisfy me on that score." Nick stormed out of the room. Nick indicated that he and Jack would seek counsel. No trust property was distributed.

Further attempts at negotiation proved unfruitful. Nick tried contacting John to no avail. Nick and Jack's attorney sent a letter requesting that John and Roger resign as trustees. John and Roger's attorney wrote back proposing a distribution of $1 million cash plus other non-liquid assets. Additional correspondence ensued, but no resolutions were reached.

In January 2005, Nick and Jack petitioned the probate court to remove John and Roger as trustees due to their failure to distribute the trust property. John and Roger sought and retained new counsel and, the following April, filed a petition for instructions asking the court to determine an appropriate trust distribution and tax holdback. Then in July, Nick and Jack filed notice raising thirteen claims of breach of trust. Nick and Jack alleged that John and Roger breached their duties as trustees:

1) to administer the trust according to its terms, Ind.Code § 30–4–3–6(a).

2) to seek court authority to deviate from the trust terms, Ind.Code § 30–4–3–26.

3) to avoid self-dealing, Ind.Code §§ 30–4–3–6(b)(5), –4–3–7.

4) to use special skills or expertise to benefit trust beneficiaries, Ind.Code § 30–4–3.5–2(f).

5) to incur only appropriate and reasonable costs to the trust, Ind.Code § 30–4–3.5–7.

6) to seek court authority to act where conflicts of interest exist, Ind.Code § 30–4–3–5.

7) to comply with the prudent investor rule, Ind.Code §§ 30–4–3.5–1, –2.

8) to diversify the investments of the trust, Ind.Code § 30–4–3.5–3.

9) to bring the trust portfolio into compliance with the purposes, terms, distribution requirements, and other circumstances of the trust, Ind.Code § 30–4–3.5–4.

10) to invest and manage the trust assets solely in the interest of the beneficiaries, Ind.Code § 30–4–3.5–5.

11) to act impartially in investing and managing trust assets, Ind.Code § 30–4–3.5–6.

12) to make the trust productive for both income and remainder beneficiaries, Ind.Code § 30–4–3–6(b)(4).

13) to include Nick as a cotrustee, Ind. Code § 30–4–3–8.

Original probate judge Charles Dieter issued a preliminary order denying removal of John and Roger as trustees but requiring an immediate distribution of $1.5 million to Nick and Jack. John and Roger complied, distributing $1.2 million in cash along with other non-liquid assets by the end of July 2005.

Judge Dieter next held hearings on Nick and Jack's breach of trust claims and, in June 2007, issued an order concluding that John and Roger breached their duty to administer the trust according to its terms for failing to timely distribute Nick and Jack's shares of the trust corpus. In particular, the trust required John and Roger to distribute the corpus of the trust less outstanding obligations promptly after the death of the settlor's spouse. Judge Dieter found that John and Roger breached

their duty by failing to promptly distribute assets to Nick and Jack above and beyond any outstanding obligations of the trust. Judge Dieter also determined that John and Roger should have sought court authority to deviate from the trust terms when they chose to retain the trust property in violation of the explicit term of the trust requiring distribution of the property promptly upon the death of the settlor's spouse. However, Judge Dieter found John and Roger not liable on Nick and Jack's eleven remaining breach of trust claims.

Judge Dieter proceeded to hear evidence on damages. Each side called its own expert. Nick and Jack's expert testified that the trustees should have distributed $1.8 million in October 2004. John and Roger's expert claimed that a distribution of $1,045,000 would have been reasonable. Nick offered evidence that, had his share been timely distributed, he would have invested the funds in his income-rich Vanguard and GE accounts. Jack offered evidence that he would have used his share to close a lucrative real estate deal in Texas. Nick and Jack's attorneys submitted affidavits indicating their fees in pursuing this claim totaled $403,612.81.

Judge Dieter died before ruling on damages, and the matter was reassigned to Judge Tanya Walton Pratt. Judge Pratt listened to recordings and reviewed the transcripts of all prior proceedings.

In assessing damages, Judge Pratt first concluded that a trust distribution of $1.2 million would have been reasonable in October 2004. She further found that Nick and Jack's relevant damages period lasted from October 2004 until October 2007 when the trust was wrapped up. Judge Pratt also credited Nick and Jack's evidence with regard to their foregone invest-

ment opportunities. Accordingly, Judge Pratt (a) awarded Nick $156,701 representing lost Vanguard and GE earnings from October 2004 to October 2007, (b) awarded Jack $112,046.77 in lost profits from his missed real estate deal, and (c) awarded Nick and Jack a slightly discounted total of $353,612.81 in attorney's fees.

John and Roger now appeal.[1]

**Discussion and Decision**

John and Roger argue (I) that Judge Dieter erred in finding that they breached their duty to administer the trust according to its terms and (II) that Judge Pratt erred in her assessment of damages and attorney's fees.

**I. Liability for Breach of Trust**

John and Roger first argue that Judge Dieter erred in finding that they breached their duty to administer the trust according to its terms.

Where a probate court enters findings of fact and conclusions of law, we apply a two-tiered standard of review. *In re Estate of Owen*, 855 N.E.2d 603, 608 (Ind.Ct.App.2006). First, we consider whether the evidence supports the findings, and second, whether the findings support the judgment. *Hardy v. Hardy*, 910 N.E.2d 851, 855 (Ind.Ct.App.2009). We neither reweigh the evidence nor assess witness credibility, and we consider only the evidence most favorable to the judgment. *Id.* We will set aside the trial court's findings and conclusions only if they are clearly erroneous; that is, if the record contains no facts or inferences supporting them. *Id.* We apply a *de novo* standard of review to conclusions of law. *Id.*

A "breach of trust" is a violation by the trustee of any duty which is owed to the settlor or beneficiary. Ind.Code § 30–4–

---

1. We heard oral argument in this case on April 13, 2011.

1–2(4); *In re Wilson Revocable Trust*, 930 N.E.2d 646, 650 (Ind.Ct.App.2010), *reh'g denied, trans. denied.* The trustee has a duty, among other things, to administer a trust according to its terms. Ind.Code § 30–4–3–6(a); *In re Stuart Cochran Irrevocable Trust*, 901 N.E.2d 1128, 1139 (Ind. Ct.App.2009), *trans. denied.*

■ Here the probate court's judgment finding John and Roger in breach of trust is supported by the record evidence. Article I of the trust agreement required trustees to divide and convey the trust property to Nick and Jack upon or promptly after Sonja's death, subject only to an appropriate tax holdback. Sonja died in July 2003. The trust filed $6.2 million in estate taxes thereafter, leaving it with $6.5 million including $3.2 million in liquid reserves. The parties disagreed as to how much money should be kept in the trust for future tax liability. John believed that the trust could owe the IRS $2 million more. Nick and Jack claim that projection was excessive. Regardless, even if John's analysis was correct and a $2 million tax holdback was appropriate, the trustees were still capable of distributing—and knew they were capable of distributing—at least $1 million in available liquid assets, and yet they declined to do so. They did not petition the probate court for instructions until six months later in April 2005, nor did they distribute any property until compelled by court order in July 2005. On this basis, a reasonable factfinder could conclude that John and Roger failed to timely distribute trust property to the beneficiaries and thus breached their duties to administer the trust according to its terms.

John and Roger insist that events transpiring between October 2004 and July 2005 preclude any finding of a breach. They stress that Nick demanded more than $1 million and stormed out of the distribution meeting; that both sides retained and began acting through counsel; that the parties attempted negotiation but could not get on the same page; that Nick and Jack requested John and Roger's resignation and later petitioned for their removal; and that John and Roger incurred delays in securing new representation. John and Roger maintain that their withholding of funds was an exercise of "reasonable care and prudence" in light of Nick and Jack's obstinance, the threat of litigation, and the need to seek advice of counsel. The probate court ruled to the contrary. We cannot say that the court's ruling is erroneous and that the foregoing circumstances establish, as a matter of law, that John and Roger acted reasonably and committed no breach of trust. *See also In re Wilson*, 930 N.E.2d 646, 651 (Ind.Ct.App.2010) (though trustee's actions were prudent, measured, and taken upon advice of counsel, evidence of delays in sale of trust property nonetheless supported finding of breach of fiduciary duty), *reh'g denied, trans. denied.* And in particular, to say that Nick and Jack "rejected" John's "proposal" or "offer" is misguided. Once the relevant trust agreement conditions were satisfied, the subject trust property belonged to Nick and Jack. No "offer" by John and Roger or "acceptance" by Nick and Jack was necessary. The bottom line is that John and Roger, in violation of the explicit terms of the trust agreement, and knowing that the subject property was available, did not distribute $1 million in trust assets or seek guidance from the courts for at least six months following the October meeting. Accordingly, we conclude that the evidence viewed in a light most favorable to the judgment supports the probate court's finding of breach and liability.

■ This is not to say that trustees may never withhold trust property where there is a reasonable dispute with the trust ben-

eficiaries over their fair shares. *See* Ind. Code § 30–4–3–18(a) ("If there is reasonable doubt with respect to any matter relating to the administration of the trust, the trustee is entitled to be instructed by the court."); *In re Trust of Johnson*, 469 N.E.2d 768, 771 (Ind.Ct.App.1984) ("A trustee is not compelled to act at his peril in the administration of the trust. He need not act first and discover later whether his act was in breach of trust." (quoting 3 A. Scott, *The Law of Trusts* § 259 (1967))), *trans. denied.* But where there is no question that a substantial portion of the trust corpus is ripe for distribution and the trustees are so aware, the trustees' failure to distribute will sustain a probate court's finding that the trustees breached their duty to administer. As a matter of policy, beneficiaries should not be starved of distributions to which they are undisputedly entitled.

## II. Damages and Attorney's Fees

John and Roger next argue that Judge Pratt erred in assessing Nick and Jack's damages and attorney's fees.

■ When a judge who heard testimony and observed the demeanor of witnesses at trial is unavailable to render a decision thereon, and where the parties stipulate that a substitute judge should determine the case on the record, the substitute judge becomes clothed with all the jurisdiction and authority which originally resided in his predecessor. *Farner v. Farner*, 480 N.E.2d 251, 257–58 (Ind.Ct.App. 1985). The special judge's decision must have the same force as a like ruling by the original judge would have, including the determination of factual questions embraced by the issues. *Id.* at 258. We may

not weigh the evidence, even where the case is tried upon the cold record.[2] *Id.* Having said that, this Court still reviews any questions of law *de novo. Hardy v. Hardy*, 910 N.E.2d 851, 855 (Ind.Ct.App. 2009).

■ We will affirm a damages award if it is within the scope of the evidence before the trial court. *G & N Aircraft, Inc. v. Boehm*, 743 N.E.2d 227, 234 (Ind. 2001). While the amount of an attorney-fee award is likewise within the sound discretion of the court, that amount must nonetheless be reasonable and supported by the evidence. *Hanson v. Valma M. Hanson Revocable Trust*, 855 N.E.2d 655, 668 (Ind.Ct.App.2006).

Indiana's Trust Code allows recovery of the following damages resulting from a breach of trust:

> If the trustee commits a breach of trust, the trustee is liable to the beneficiary for:
>
> (1) any loss or depreciation in the value of the trust property as a result of the breach;
>
> (2) any profit made by the trustee through the breach;
>
> (3) any reasonable profit which would have accrued on the trust property in the absence of a breach; and
>
> (4) reasonable attorney's fees incurred by the beneficiary in bringing an action on the breach.

Ind.Code § 30–4–3–11(b); *In re Wilson*, 930 N.E.2d 646, 652 (Ind.Ct.App.2010), *reh'g denied, trans. denied.*

■ Nick and Jack recovered damages for their lost investment opportunities apparently pursuant to subsection 30–4–3–

---

2. John and Roger urge us to review Judge Pratt's damages assessment *de novo,* but they concede that under *Farner* the factual determinations of successor judges are afforded

deference. Appellants' Reply Br. 11–12. We reach the same conclusions in this case employing either a *de novo* or a deferential standard of review.

11(b)(3), which permits compensation for "any reasonable profit which would have accrued on the trust property in the absence of a breach." We conclude, however, that any recovery under this subsection was unfounded.

The Trust Code Study Commission Comments indicate that Section 30–4–3–11(b) was adopted in substantial part from Restatement (Second) of Trusts section 205. *See* Ind.Code Ann. § 30–4–3–11 (West 2009). Restatement section 205 provides:

> If the trustee commits a breach of trust, he is chargeable with
>
> (a) any loss or depreciation in value of the trust estate resulting from the breach of trust; or
>
> (b) any profit made by him through the breach of trust; or
>
> (c) any profit which would have accrued to the trust estate if there had been no breach of trust.

Restatement (Second) of Trusts § 205 (1959). In turn, the Restatement's comment to subsection 205(c) explains:

> *i. Failure to make a profit.* If the trustee commits a breach of trust, he is chargeable with any profit which would have accrued to the trust estate if he had not committed such breach of trust. This rule is applicable where the trustee in breach of trust sells or otherwise disposes of trust property which it was his duty to retain, and where the trustee in breach of trust fails to purchase property which it was his duty to purchase for the trust.
>
> This rule is applicable to income as well as principal. Thus, if the trustee in breach of trust fails to make the trust property productive he is liable for the amount of income which he would have received if he had not committed the breach of trust.

(internal citations omitted).

■■■ The above-quoted commentary clarifies that the lost profits contemplated by Restatement section 205(c) and corresponding Indiana Code section 30–4–3–11(b)(3) are those profits lost to the trust corpus due to a trustee's misuse of or failure to acquire trust property. Sections 205(c) and 30–4–3–11(b)(3) are not addressed to the scenario where, as here, a trustee has withheld trust property from a beneficiary, and we do not read these provisions to allow compensation for individual profits that beneficiaries allegedly would have generated on their personal shares but for a trustee's failure to timely distribute.

■■■ We understand a claim for failure to timely distribute trust property as more analogous to a claim for conversion or for money had and received. In essence, the trustees are alleged to have wrongfully retained property belonging to the beneficiaries.

And under such circumstances, the aggrieved party, after reclaiming what is rightfully his, may at the court's discretion recover interest representing the value of the lost use of his property for the period of deprivation. *See* George G. Bogert & George T. Bogert, *The Law of Trusts and Trustees* § 863 (Rev.2d ed. 1995) ("Where the trustee has deprived the beneficiary of the use of trust property or its proceeds or products, the value of that use may be estimated by charging interest."); *id.* § 814 ("In the case of delayed payments, payment of interest may make the beneficiary whole."); *Stanley's Estate v. Pence,* 160 Ind. 636, 66 N.E. 51, 53–54 (1903) ("As a general rule, in the absence of anything to the contrary, the question of requiring a trustee to pay interest on the trust funds is one which must depend upon the facts

and circumstances in each particular case; and, where good conscience requires that the trustee be charged with interest, the payment thereof ought to be exacted."); *see also* Ind.Code § 24–4.6–1–103 ("Interest at the rate of eight percent (8%) per annum shall be allowed ... from the date an itemized bill shall have been rendered and payment demanded on an account stated, account closed or for money had and received for the use of another and retained without his consent."); *Nance v. Miami Sand & Gravel, LLC*, 825 N.E.2d 826, 836 (Ind.Ct.App.2005) ("Where converted property is returned, damages for the deprivation of the use of the property may be measured by the fair rental value for the period of conversion. The equivalent of 'fair rental value' where money is concerned would be interest." (quotation omitted)).

Here, Judge Pratt found that John and Roger should have distributed $1.2 million in October 2004. This determination was within the scope of the evidence, as Nick and Jack's expert testified that a reasonable distribution in October would have been $1.8 million and John and Roger's expert pegged an appropriate distribution at $1,045,000. Judge Pratt's number also makes particular sense, given that the trust had $3.2 million in liquid assets and John wanted to retain $2 million for projected tax liability. Nick and Jack received a court-ordered distribution of $1.2 million cash in July 2005. So by July 2005, Nick and Jack had obtained the entire distribution that Judge Pratt found they were entitled to in October 2004. Nick and Jack were thus deprived of $1.2 million for nine months between October 2004 and July 2005. Accordingly, we conclude that Nick and Jack are entitled only to interest on their withheld distributions from October until July, minus any interest and/or income that the money actually accrued in that period while held in the trust. We find any assessment of compensatory damages beyond that erroneous.

▆▆▆▆ As for attorney's fees, Indiana Code section 30–4–3–11(b)(4) permits recovery of "reasonable attorney's fees incurred by the beneficiary in bringing an action on the breach." Among the factors relevant in assessing reasonable attorney's fees are counsel's hourly rate, the difficulty of the issues involved, and the "result achieved in the litigation." *Davis v. Davis*, 889 N.E.2d 374, 388 (Ind.Ct.App. 2008); *Franklin College v. Turner*, 844 N.E.2d 99, 105 (Ind.Ct.App.2006); *see also* Ind. Professional Conduct Rule 1.5 (factors considered in determining the reasonableness of fee include "the results obtained"). Here we cannot ignore that Nick and Jack initiated intensive and protracted litigation yet prevailed on only two of their thirteen breach of trust claims. And in light of our conclusions above, the amount of damages to which they are entitled is in the end relatively minimal. At most they might recover nine months' interest on a $1.2 million distribution. For these reasons we find Judge Pratt's $353,612.81 attorney-fee award excessive. We conclude on this record that $150,000 is a more appropriate assessment.

We remand this cause for proceedings consistent with this opinion, specifically for a determination of compensatory damages plus an award of $150,000 in attorney's fees.

Affirmed in part, reversed in part, and remanded.

BARNES, J., concurs.

BAKER, J., dissents with separate opinion.

BAKER, Judge, dissenting.

I cannot agree with the conclusion that John and Roger committed a breach of

trust. The majority asserts that "where there is no question that a substantial portion of the trust corpus is ripe for distribution and the trustees are so aware, the trustees' failure to distribute will sustain a probate court's finding that the trustees breached their duty to administer." Op. at 571.

It is undisputed that John and Roger were required to act with "reasonable care and prudence," in accordance with the terms of the trust. Appellant's App. p. 353. And when a question arises as to whether a breach of duty has occurred, such a determination is generally a question of fact. However, that issue can also be a question of law "where the facts are undisputed and only a single inference can be drawn from those facts." *N. Ind. Publ. Serv. Co. v. Sharp*, 790 N.E.2d 462, 466 (Ind.2003).

As the majority aptly points out, the trustees may withhold trust property where there is a reasonable dispute with the trust beneficiaries over their fair shares. More particularly, Indiana Code section 30-4-3-18(a) provides that "if there is reasonable doubt with respect to any matter relating to the administration of the trust, the trustee is entitled to be instructed by the court." Also, in accordance with *In re Trust of Johnson*, 469 N.E.2d 768, 771 (Ind.Ct.App.1984), this court has determined that " '[a] trustee is not compelled to act at his peril in the administration of the trust. He need not act first and discover later whether his act was in breach of trust.' " (quoting 3 A. Scott, The Law of Trusts § 259 (1967)), *trans. denied.* Where a trustee determines that it is necessary and proper to use trust assets for a certain purpose, the court "will not interfere unless the trustee acted in bad faith or in some way abused or unreasonably exercised his discretion."

*Goodwine v. Goodwine*, 819 N.E.2d 824, 828 (Ind.Ct.App.2004).

In this case, the record demonstrates that when Nick realized that he would not receive the distribution he demanded, he "stalked out of the [meeting] room," refused to discuss the matter further, and told John and Roger that they would be hearing from his attorney. Appellant's App. p. 64. In short, Nick clearly rejected John and Roger's distribution proposal.

I would also note that John and Roger's proposed $1,000,000 distribution that was initially presented at the October 2004 meeting was based on a projected future potential tax liability of about $2,000,000. *Id.* at 394–95. John had been a CPA for approximately thirty years before he analyzed the trust's future tax liability. *Id.* at 223. He had also served as a trustee on nine or ten other occasions in those thirty years. *Id.* at 224. John put that experience and training to use, and deemed the $2,000,000 holdback appropriate.

By October 2004, the trust had paid about $6,200,000 in estate taxes. Tr. p. 63. Thus, about $6.5 million remained in assets in the trust, slightly more than $3 million of which were liquid. *Id.* at 382, 389–90. After subtracting John's projected $2,000,000 in estimated future tax liability, about $1,000,000 in liquid assets remained, which was the very amount that John and Roger proposed to distribute to Nick and Jack. *Id.* at 394–95; 398. When Nick declined to accept a lesser distribution and conveyed his intention to consult with legal counsel, John and Roger pursued the course of action that we have recommended so frequently: they asked the trial court for guidance. *See, e.g., Stowers v. Norwest Bank Ind., N.A.,* 624 N.E.2d 485, 489 (Ind.Ct.App.1993) (observing that if the trustee "had any question with regard to the proper distribution of the trust's assets, it could have asked the court for

guidance prior to distribution"). When Nick and Jack took the issue of distributions to court, John and Roger appropriately petitioned for instructions and awaited direction from the trial judge. Tr. p. 556, 559, 965–66. Thereafter, when the trial court gave its direction in July 2005, and ordered John and Roger to make a distribution, they did so immediately and distributed everything that had been originally proposed the previous fall, plus an additional $200,000. *Id.* at 420–21, 530, 540, 662.

In my view, to penalize John and Roger for doing that which we consistently direct trustees to do—and which they are statutorily entitled to do—is misguided and contrary to law. Nick invited this unfortunate set of circumstances when he rejected the proposed distribution, and I can only conclude that John and Roger's withholding of funds was an exercise of "reasonable care and prudence" when considering Nick and Jack's behavior, the threat of litigation, and the need to seek the advice of legal counsel. In short, the record is devoid of evidence that John and Roger abused their discretion or acted in bad faith. To the contrary, they were careful, measured, and responsible in their actions as trustees.

I would reverse the trial court's finding that John and Roger committed a breach of trust in this instance.