## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 25 2015, 10:29 am

CLERK
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANT | ATTORNEY FOR APPELLEES |
|---|---|
| Joseph A. Sobek | Paul D. Refior |
| Reed & Earhart Attorneys, P.C. | Refior Law Office |
| Warsaw, Indiana | Warsaw, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Trust of H. Paul Lauster, Deceased, and Mary E. Lauster, Deceased, Christopher D. Lauster, *Appellant-Petitioner,* v. John M. Lauster and David P. Lauster, *Appellees-Co-Trustees.* | March 25, 2015 Court of Appeals Case No. 43A03-1407-TR-237 Appeal from the Kosciusko Superior Court The Honorable James R. Heuer, Special Judge Cause No. 43D01-1208-TR-136 |

**Kirsch, Judge.**

[1] This case involves a dispute between Christopher D. Lauster ("Christopher") and John M. Lauster ("John") and David P. Lauster ("David") (together, "the Trustees") regarding the administration of the joint revocable trust of their

parents. Christopher appeals the trial court's order, which denied the relief Christopher sought in his motion to enforce the mediation agreement. Christopher raises the following restated issues for our review:

> I. Whether the trial court erred in considering the accounting of the trust assets provided by the Trustees and not requiring supporting documentation to substantiate the accounting; and
>
> II. Whether the trial court abused its discretion in the amount of attorney fees ordered.

The Trustees additionally raise an issue requesting appellate attorney fees, alleging that Christopher's appeal is frivolous and brought in bad faith.

We affirm.

## Facts and Procedural History

In May 2010, H. Paul Lauster passed away, and in September 2010, his wife, Mary E. Lauster (together, "the Parents") also passed away. At the time of the Parents' death, a trust was in place for the equal shared benefit of the Parents' eight children, including Christopher, John, and David. John and David were named as co-trustees of the trust, and John, an accountant, prepared the accounting of the trust. John kept track of all of the trust accounting in a spreadsheet, and the detailed ledger was admitted at the hearing. Christopher received summaries of the trust accounting annually. The trust accounting reflected all amounts received and expended from the trust. Christopher also received directly from the bank a copy of the bank statement that reflected the trust's monetary receipts and expenditures.

[4]     On August 27, 2012, Christopher filed a petition to docket the trust and to remove the Trustees and/or compel the Trustees to perform their duties. On November 5, 2012, the trial court ordered the case to mediation. The mediation occurred on April 22, 2013, and resulted in a written and signed mediation agreement on April 24, 2013. In pertinent part, the mediation agreement stated:

> 1. An accounting shall be provided to all heirs.
>
> . . . .
>
> 3. The Trust shall pay Scott Lennox [sic] fee on behalf of [Christopher] which fee is approximately $4,000.00 as of the start of the mediation.

*Pet'r's Ex.* 1.

[5]     On September 26, 2013, Christopher filed a motion to enforce the mediation agreement, contending that the Trustees, among other things: (1) failed to "provide an adequate and appropriate accounting," which lacked "documentation supporting any of the accounting figures" despite his repeated requests; and (2) failed to pay the attorney fees incurred by Christopher and payable pursuant to the mediation agreement despite his submission of documentation of such fees. *Appellant's App.* at 6. On the same date, the Trustees filed a counter-motion to enforce the mediation agreement, detailing how Christopher had not followed the mediation agreement and had declined to cooperate and requesting attorney fees incurred since the mediation. *Id.* at 28-29. A hearing on the parties' motions was held on January 31, 2014, and the

trial court took the matter under advisement. On June 17, 2014, the trial court issued its order, which found in pertinent part:

1. The Trust balance which is subject to distribution is $139,799.34.

2. [Christopher's] share is one-eighth or $17,474.92.

. . . .

4. The [Trustees] shall deliver the sum of $4,000.00 in attorney fees to Attorney Scott Lennox on or before July 11, 2014.

5. [Christopher's] claims for additional attorney fees, interest and appraisal expenses are denied.

. . . .

10. The [Trustees'] claim for attorney fees and expenses is denied.

*Id*. at 45-46. Christopher now appeals.

# Discussion and Decision

[6] When the trial court enters an order containing findings of fact and conclusions, we apply a two-step review. *In re Wilson,* 930 N.E.2d 646, 650 (Ind. Ct. App. 2010), *trans. denied.* First, we consider whether the evidence supports the findings, and second, whether the findings support the judgment. *Id.* We will neither reweigh the evidence nor assess witness credibility, considering only the evidence most favorable to the judgment. *Id.* We will set aside the trial court's findings and conclusions only if they are clearly erroneous, that is, if the record contains no facts or inferences supporting them. *Id.* We apply a *de novo* standard of review to conclusions of law. *Id.*

# I. Accounting

Christopher argues that the trial court erred in failing to order an accurate accounting for the trust. Specifically, he contends that, although he requested supporting documentation from the Trustees to substantiate the trust accounting, he never received any checks, receipts, or other supporting documents. Christopher asserts that, under Indiana law, he was entitled to "complete and accurate information concerning any matter related to the administration of the trust" and to be permitted to inspect the trust accounts. *Appellant's Br*. at 6 (citing Ind. Code § 30-4-3-6(b)(6), (7)). He further claims that the parties agreed to such an accounting in mediation, but the trial court failed to order such a complete and accurate accounting and, instead, concluded that the arbitrary amount of $139,799.34 was accurate.

Generally, a trustee bears the burden of justifying the propriety of items in a trust account. *In re Riddle*, 946 N.E.2d 61, 68 (Ind. Ct. App. 2011). But when a trustee files specific accounts and makes a *prima facie* showing that the accounts are proper, the burden of persuasion shifts to the beneficiaries to show specific instances of impropriety. *Id.* With respect to a trustee's obligation to render an accounting, Indiana Code section 30-4-5-12 states, in pertinent part:

> (a) Unless the terms of the trust provide otherwise or unless waived in writing by an adult, competent beneficiary, the trustee shall deliver a written statement of accounts to each income beneficiary or his personal representative annually. The statement shall contain at least:
>
> (1) all receipts and disbursements since the last statement; and
>
> (2) all items of trust property held by the trustee on the date of the statement at their inventory value.

Ind. Code § 30-4-5-12(a).

[9] Here, evidence was presented to the trial court that the Trustees provided Christopher and the other beneficiaries with an annual accounting of the trust, showing the total activity for the trust including the cash balances of the trust accounts, home sale proceeds, and the total expenses and distributions. Additionally, during much of the duration of the trust, Christopher was receiving directly from the bank a copy of the bank statement for the trust account that reflected the funds owned by the trust, the income of the trust, and the disbursements. At the hearing, the Trustees provided the trial court with an exhibit consisting of a detailed ledger with every date, payee, and dollar amount of the trust disbursements and expenses. Testimony was given that the expenses reflected in the exhibit all directly related to an expense for the trust. *Tr.* at 44.

[10] The evidence presented by the Trustees made a *prima facie* showing that the accountings were proper, and the burden then shifted to Christopher to show specific instances of impropriety by the Trustees. Christopher does not identify any portions of the record showing that he raised any specific instances of impropriety to the trial court. He presented no evidence that any of the amounts of either account balances or disbursements were incorrect or of any wrongdoing on the part of the Trustees. We, therefore, conclude that the Trustees made a *prima facie* showing that the trust accounting was proper, and Christopher failed to show any specific instances of impropriety. The trial court

did not err in finding the trust accounting sufficient to determine the trust balance for distribution.

## II. Attorney Fees

[11]   The amount recoverable for an award of attorney fees is left to the sound discretion of the trial court. *Kotsopoulos v. Peters Broad. Eng'g, Inc.*, 962 N.E.2d 97, 109 (Ind. Ct. App. 2011) (quotations omitted). We will reverse the trial court's award of attorney fees only where we find there has been an abuse of discretion. *Id.* The trial court abuses its discretion when its decision is clearly against the logic and effect of the facts and circumstances before it. *Id.* The amount of the award must be supported by the evidence. *Id.*

[12]   Christopher argues that the trial court abused its discretion in failing to award the appropriate amount of attorney fees to him. He contends that the trial court misinterpreted the mediation agreement and assumed that $4,000.00 was the total amount of attorney fees due to him. Christopher asserts that the mediation agreement intended $4,000.00 to be an approximation and that such amount was only meant to be an estimated starting point for the amount of attorney fees.

[13]   Indiana follows the general rule that each party to a litigation must pay his own attorney fees. *Masonic Temple Ass'n of Crawfordsville v. Ind. Farmers Mut. Ins. Co.*, 837 N.E.2d 1032, 1037 (Ind. Ct. App. 2005). Therefore, attorney fees are not allowable in the absence of a statute, agreement, or rule to the contrary. *Id.* at 1037-38. Here, the mediation agreement stated: "The Trust shall pay Scott

Lennox [sic] fee on behalf of [Christopher] which fee is approximately $4,000.00 as of the start of the mediation." *Pet'r's Ex*. 1. Therefore, under the mediation agreement, an exception to the general rule that each party must pay his own attorney fees, the trust was ordered to pay Christopher's attorney fees.

[14] Settlement agreements are governed by the same general principles of contract law as any other agreement. *Georgos v. Jackson*, 790 N.E.2d 448, 453 (Ind. 2003). The interpretation and construction of a contract is a function for the courts. *Fackler v. Powell*, 891 N.E.2d 1091, 1095-96 (Ind. Ct. App. 2008), *trans. denied*. When interpreting a contract, a court must ascertain and effectuate the intent of the parties. *Pinkowski v. Calumet Twp. of Lake Cnty.*, 852 N.E.2d 971, 981 (Ind. Ct. App. 2006). If the contract language is unambiguous and the intent of the parties is discernible from the written contract, the court is to give effect to the terms of the contract. *Fackler*, 891 N.E.2d at 1096. A contract is ambiguous if a reasonable person would find the contract subject to more than one interpretation; however, the terms of a contract are not ambiguous merely because the parties disagree as to their interpretation. *Id.*

[15] When the contract terms are clear and unambiguous, the terms are conclusive and we do not construe the contract or look to extrinsic evidence, but will merely apply the contractual provisions. *Id.* However, if a contract is ambiguous, it is the responsibility of the fact finder to ascertain the facts necessary to construe the contract. *Pinkowski*, 852 N.E.2d at 981. In construing the terms of an ambiguous contract, extrinsic circumstances and rules of

contract construction may be employed to help construe the contract and ascertain the intent of the parties. *Id.*

[16] On its face, the mediation agreement states that the trust is to pay Christopher's attorney fees "which fee is approximately $4,000.00 as of the start of the mediation." *Pet'r's Ex.* 1. We find this language to be ambiguous, so therefore, extrinsic evidence may be employed to ascertain the intent of the parties. At the hearing, the trial court heard evidence from the parties as to their understanding and interpretation of the provision regarding Christopher's attorney fees. Christopher testified that he understood the provision to mean that the trust was to pay all of his attorney fees, not limited to only $4,000.00 pre-mediation fees. *Tr.* at 14-15. John testified that his understanding was that, under the mediation agreement, the trust was only to pay "approximately [$4,000.00] up to the start of mediation and was not to continue past that at all." *Id.* at 46. David testified that it was his understanding that, in signing the mediation agreement, they were not agreeing to pay any of Christopher's attorney fees after the start of mediation. *Id.* at 71. David further stated that he would not have signed the agreement if it had required the trust to pay Christopher's attorney fees after the mediation. *Id.* at 72.

[17] Both sides testified to as to their understanding of the provision, which created an issue of credibility for the trial court to determine. In finding that the trust was to pay $4,000.00 in attorney fees to Christopher's attorney, the trial court made a credibility determination that it believed the Trustees' interpretation of the mediation agreement to be the more accurate interpretation of the language.

We conclude that the trial court correctly interpreted the provision to mean that the trust was only responsible for $4,000.00 of Christopher's attorney fees. The trial court did not abuse its discretion.

## III. Appellate Attorney Fees

[18] Indiana Appellate Rule 66(E) provides, in pertinent part, "[t]he Court may assess damages if an appeal . . . is frivolous or in bad faith. Damages shall be in the Court's discretion and may include attorneys' fees." Our discretion to award attorney fees under this rule is limited to instances when an appeal is permeated with meritlessness, bad faith, frivolity, harassment, vexatiousness, or purpose of delay. *In re Estate of Carnes*, 866 N.E.2d 260, 267 (Ind. Ct. App. 2007) (citing *Thacker v. Wentzel,* 797 N.E.2d 342, 346 (Ind. Ct. App. 2003)). While we have discretion to award damages on appeal, we must use extreme restraint when exercising this power because of the potential chilling effect upon the exercise of the right to appeal. *Poulard v. Laporte Cnty. Election Bd.*, 922 N.E.2d 734, 737 (Ind. Ct. App. 2010). "A strong showing is required to justify an award of appellate damages, and the sanction is not imposed to punish mere lack of merit, but something more egregious." *Id.* at 737-38.

[19] Here, the Trustees contend that this court should assess damages in the form of appellate attorney fees and costs against Christopher because this appeal is frivolous and brought in bad faith. Although we conclude that Christopher does not prevail in his appeal, we cannot conclude that this appeal is frivolous

or was brought in bad faith. We, therefore, deny the request for appellate attorney fees.

[20] Affirmed.

Friedlander, J., and Crone, J., concur.