George KOTSOPOULOS, Appellant–Defendant/Counterclaimant,

v.

PETERS BROADCAST ENGINEERING, INC., Appellee–Plaintiff/Counterdefendant.

No. 02A03–1012–PL–675.

Court of Appeals of Indiana.

Nov. 23, 2011.

Ordered Published Feb. 10, 2012.

Charles E. Davis, Davis Law, LLC, Fort Wayne, IN, Attorney for Appellant.

G. Martin Cole, Lindsay M. Hurni, Burt, Blee, Dixon, Sutton & Bloom, LLP, Fort Wayne, IN, Attorneys for Appellee.

## OPINION

KIRSCH, Judge.

George Kotsopoulos ("Kotsopoulos") appeals from the trial court's denial of his motion to correct error and judgment in favor of Peters Broadcast Engineering, Inc. ("PBE"), on PBE's complaint alleging conversion, statutory damages, accounts stated and due, and Kotsopoulos' counterclaim alleging fraud and unjust enrichment. The issue presented for our review is whether the trial court's judgment is supported by sufficient evidence or is erroneous as a matter of law.

We affirm and remand with instructions.

## FACTS AND PROCEDURAL HISTORY

Robert Peters ("Peters") is a broadcast engineer and the owner and president of PBE. In September 2006, PBE was retained by Bob Britt ("Britt"), operational manager and twenty-five percent share partner of Three Amigos, a Hispanic radio station with a transmitter in Garrett, Indiana, to perform work related to the design and build of a studio. Three Amigos hired PBE on a retainer basis at the rate of $600.00 per month, including labor for normal wear and tear on radio station equipment, but not covering acts of God, vandalism, and user-induced problems, the repairs of which would be separately billed. PBE performed several jobs over the years for Three Amigos, which were separately billed at an hourly rate depend-

ing on the nature of the work performed and the particular PBE employee doing the work. All bills submitted to Three Amigos were sent via e-mail or hand-delivered. Neither Three Amigos nor Kotsopoulos, the majority share owner of Three Amigos and partner with check-writing authority, objected to the amounts charged by PBE for the work performed until after litigation ensued.

In March 2008, the Federal Aviation Authority notified Peters that the Three Amigos' transmitter in Garrett, Indiana needed to be shut down because its transmissions interfered with airport tower communications and data. Peters visited the Garrett site and found that the interference was coming from the Three Amigos' transmitter at that site. Three Amigos hired PBE to perform the repairs necessary to make the station operational without further interfering with the airport's radio towers. Kotsopoulos instructed Peters to contact the insurance carrier for Three Amigos.

Upon examining the transmitter site, Peters concluded that the transmitter had been struck by lightning, and, because of its age, needed to be replaced. The insurance adjuster for Three Amigos contacted Peters to obtain his findings and recommendations regarding the damage to and repair of the transmitter. After reviewing PBE's recommendations, and viewing the transmitter itself, the insurance adjuster concluded that a full replacement of the transmitter was appropriate. The adjuster asked Peters to provide an estimate for a like-kind replacement. Peters recommended a "solid state" replacement, which was similar to the damaged transmitter. The insurance company adjusted the claim based on Peters' recommendation for a like-kind replacement transmitter, and issued a check to Three Amigos and PBE as co-payees in the amount of $39,800.00.

That amount included replacement costs and labor for the damaged transmitter. The insurance company sent the check directly to Three Amigos, its insured.

Kotsopoulos discussed the transmitter problem with Peters and told him that he did not want to spend the insurance money on replacing the damaged transmitter with a new solid state component. Instead, Kotsopoulos chose to spend the insurance money fixing the transmitter because Kotsopoulos believed that Three Amigos did not receive enough money in settlement of the insurance claim to replace it. Peters informed Kotsopoulos that the repairs to the transmitter would cost approximately $26,312.00, a figure he later submitted in writing. PBE performed the repairs to the transmitter as instructed by Kotsopoulos and was able to make the transmitter operable. PBE refused to warrant the repairs to the transmitter in excess of six months because of the extent of the damage to, and the age of, the transmitter. The transmitter was approximately twenty years old and certain second-hand parts were used to replace damaged ones as certain parts were no longer being manufactured.

PBE employee and technician, Jamie Till ("Till"), tested the repairs on the transmitter performed by PBE and found that the radio station was running at full capacity and within specifications. Till did not consider the repairs to be a permanent fix because the transmitter equipment was in poor condition and would need to be replaced.

At the time the repairs were being performed, Three Amigos owed PBE approximately $14,651.45 for past work performed and retainer fees. PBE sent Three Amigos an invoice dated October 17, 2008, for past work performed on the damaged transmitter, including parts and labor, in

the amount of $26,312.00, the original estimate given by PBE.

Several weeks after PBE performed work on the transmitter, PBE had not been fully paid. Peters placed a call to the insurance carrier and was informed that the check for the repairs to the transmitter had been processed. Peters was unaware of the amount of the check or the date on which the check had been issued.

Prior to the issuance of the insurance check, Peters and Kotsopoulos had come to an oral agreement whereby Peters would accept $21,000.00 for the repairs to the transmitter if Kotsopoulos would catch up on payments due and owing to PBE, which at the time were in the amount of $14,651.45. After the passage of several weeks, Kotsopoulos did not mention the issuance of the insurance check. On June 26, 2008, Kotsopoulos called Peter to his office, stated that the amount received from the insurance company was less than he had expected, and asked Peters if PBE would be willing to accept $13,000.00 instead of $21,000.00. Peters did not agree to the proposal because the $21,000.00 figure had been negotiated with the expectation that Three Amigos would pay the $14,651.45 that was already due on the account from prior work. Three Amigos issued PBE a check in the amount of $17,000.00 with the promise that PBE would be paid the remainder at a later date. Peters cashed the $17,000.00 check on behalf of PBE and applied the proceeds to the oldest balance on the account to reduce the accrual of additional interest on the old debts.

In August 2008, Three Amigos contacted PBE to perform repairs caused by a second lightning strike. Till examined the transmitter and confirmed that it was completely destroyed. Peters was able to repair three of the four transmitter modules, and replaced one of the modules with a dummy module pulled from PBE's own equipment in an effort to keep the station on the air. The purpose of installing the dummy module in the empty module slot was to allow for proper air flow and cooling.

Peters continued to send invoices and statements of account to Three Amigos for the work performed, but the accounts remained unpaid. No one objected on behalf of Three Amigos to the amounts owed. In October 2008, PBE sent Three Amigos an invoice in the amount of $26,312.00 for work performed related to the first lightning strike. Peters invoiced the entire amount for the work performed instead of the previously agreed $21,000.00 amount because Kotsopoulos had not paid anything on the account since he had issued the check for $17,000.00 to PBE.

In late January 2009, PBE received a 1099 Statement for Recipient of Miscellaneous Income from Auto–Owners Insurance Company ("Auto–Owners") in the amount of $39,800.00. Peters contacted Auto–Owners regarding the 1099, and an employee there faxed a copy of the insurance check, apparently issued in May 2008 and made payable to both Three Amigos and PBE for $39,800.00. Upon examining the signatures endorsing the check, Peters concluded that his name had been forged. That was the first time Peters had seen the check for $39,800.00.

Due to the unpaid balance on Three Amigos' account, PBE ceased performing work for the company in February 2009. Peters also executed a Forged Signature Affidavit for First Federal Bank on February 23, 2009, in which he stated that he had never received any benefit from, value, or consideration for the check and did not present the check for negotiation. Peters acknowledged the receipt of $17,000.00 from Three Amigos, but was unaware of the source of the funds. He further as-

serted that, to the extent the source of the $17,000.00 was the Auto–Owners insurance check, he did in fact receive some value toward his services. The Auto–Owners insurance check was honored by First Federal Bank on June 12, 2008.

Gregory Case ("Case"), a contract engineer and owner of Broadcast Technical Engineering ("BTE"), a direct competitor of PBE, was contacted by Three Amigos in 2009 to repair a weak transmitter signal. Case repaired four transmitter modules at the time. When Case inspected the transmitter he found that one of the modules was not operating and was the source of the weak signal. He also noted that the transmitter modules appeared to have the same serial numbers as the modules he had installed prior to Three Amigos' purchase of the radio station. Upon that observation he concluded that none of the modules had been replaced. He also believed that there was no evidence of fire or damage caused by lightning.

PBE filed a complaint against Kotsopoulos, Three Amigos, and First Federal Bank on September 15, 2009, for conversion, statutory damages, accounts stated and due, and statutory conversion by a depository bank. PBE's claim against Three Amigos was for unpaid invoices. The claim against Kotsopoulos and Three Amigos was for conversion due to the alleged forgery of PBE's signature and the deposit of the insurance check made jointly to PBE and Three Amigos. PBE also sued First Federal Bank for statutory conversion. PBE's claim for statutory damages was based on claims of theft, conversion, forgery, and deception. Three Amigos and Kotsopoulos filed an answer with affirmative defenses and a counterclaim alleging that PBE had defrauded them by billing and receiving payment for repairs that had not been performed.

Pursuant to a settlement agreement, mutual release, and assignment of specific claims entered into between PBE and First Federal Bank, First Federal was dismissed as a party defendant with prejudice. PBE was given an assignment of First Federal's claims against Three Amigos and Kotsopoulos. On the first day of the two-day bench trial, PBE was formally substituted in as the proper party to assert First Federal Bank's claims. Both parties filed proposed findings of fact and conclusions thereon.

Three Amigos filed a petition for Chapter 11 bankruptcy on September 1, 2010. The trial court entered its judgment in favor of PBE on all claims and counterclaims. On September 20, 2010, Kotsopoulos filed his notice of appeal, and filed his petition for Chapter 11 bankruptcy the next day. On October 1, 2010, Kotsopoulos filed a motion to correct error, relief from judgment and stay of the notice of appeal pending a ruling on the motion to correct error. At the conclusion of the hearing on Kotsopoulos' motion, the trial court denied the motion, relief from judgment, and stay of the notice of appeal. Kotsopoulos and Three Amigos filed a second notice of appeal. Three Amigos was subsequently dismissed from the appeal as the judgment against it was unenforceable due to the automatic stay which issues upon the filing of the bankruptcy petition. Kotsopoulos requested a remand to the trial court for further review of his fraud allegation. That motion was denied. The bankruptcy court lifted the stays as to both Kotsopoulos and Three Amigos so they could pursue their state court remedies and appeal the judgments against them. Kotsopoulos now appeals.

## DISCUSSION AND DECISION

We note, as an initial matter, that Kotsopoulos filed a motion for relief from

judgment in addition to a motion to correct error. Kotsopoulos does not directly challenge the trial court's denial of his motion for relief from judgment, but instead incorporates the evidence offered in support of that motion, to challenge the sufficiency of the evidence relied upon by the trial court in entering its judgment against him.

 We review a trial court's denial of a motion for relief from judgment for an abuse of discretion. *Case v. Case,* 794 N.E.2d 514, 517 (Ind.Ct.App.2003). A trial court abuses its discretion when its denial of the motion is clearly against the logic and effect of the facts and inferences supporting the judgment for relief. *Id.* "On a motion for relief from judgment, the burden is on the movant to demonstrate that relief is both necessary and just." *G.B. v. State,* 715 N.E.2d 951, 953 (Ind.Ct.App. 1999).

 Kotsopoulos claimed that he was entitled to relief from judgment based upon newly discovered evidence. In support of his motion, Kotsopoulos submitted his own affidavit and that of the adjuster for Auto–Owners in which both claimed, among other things, discrepancies as to certain dates testified to at trial, and alleged that such constituted fraud upon the trial court. In ruling on the motion, the trial court concluded that many of the arguments made were irrelevant to the issues decided at trial, that the discrepancies went to the weight of the evidence and did not establish fraud, and that the purported newly discovered evidence could have been presented at trial. On appeal, Kotsopoulos has failed to attack the reasoning and judgment of the trial court. Therefore, we conclude that the trial court did not abuse its discretion in denying the motion for relief from judgment.

 Although framed as several issues, Kotsopoulos' argument appears to be that the trial court's judgment is not supported by sufficient evidence and is erroneous as a matter of law. He appeals from an adverse judgment with respect to PBE's claims against him, and from a negative judgment with respect to his counterclaim against PBE. "A negative judgment is one that was entered against a party bearing the burden of proof; an adverse judgment is one that was entered against a party defending on a given question[.]" *Romine v. Gagle,* 782 N.E.2d 369, 376 (Ind.Ct.App.2003). When a trial court enters findings of fact in favor of the party bearing the burden proof, we will deem the findings to be clearly erroneous where they are not supported by substantial evidence of probative value. *Garling v. Ind. Dep't of Natural Res.,* 766 N.E.2d 409, 411 (Ind.Ct.App.2002). We will reverse the judgment even where we find substantial supporting evidence, if we have a definite and firm conviction that a mistake was made. *Id.* A party appealing from a negative judgment must show that the evidence points unerringly to a conclusion different than that reached by the trial court. *Mominee v. King,* 629 N.E.2d 1280, 1282 (Ind.Ct.App.1994). We will reverse the negative judgment only where the decision of the trial court is contrary to law. *Id.* In making the determination whether a trial court's decision is contrary to law, we must determine if the undisputed evidence and all reasonable inferences to be drawn from that evidence lead to but one conclusion, and the trial court has reached a different conclusion. *Id.*

 Kotsopoulos presents the argument that the trial court's adoption of PBE's proposed findings of fact and conclusions of law was improper and supports his claim that the judgment therefore was erroneous. The practice of adopting a party's proposed findings is not prohibited, but the failure to prohibit such practice

should not be interpreted as encouragement of the wholesale adoption of a party's proposed findings and conclusions. *Piles v. Gosman*, 851 N.E.2d 1009, 1012 (Ind.Ct. App.2006). "When the trial judge signs the findings of fact and conclusions of law, they become the court's findings of fact and conclusions of law." *Ind. Tri–City Plaza Bowl, Inc. v. Glueck's Estate*, 422 N.E.2d 670, 674 (Ind.Ct.App.1981). The trial court is responsible for their correctness, and the findings and conclusions are not weakened because they were adopted verbatim. *Id.* Our inquiry on appellate review in that situation is whether such findings, adopted by the trial court, are clearly erroneous. *Piles*, 851 N.E.2d at 1012.

 Kotsopoulos alleges that the trial court's judgment against him is clearly erroneous because PBE was not entitled to any payment beyond the $17,000.00 received based on the work done for him and Three Amigos. One of the counts in PBE's complaint had alleged accounts stated and due. "An account stated is an agreement between the parties that all items of an account and balance are correct, together with a promise, expressed or implied to pay the balance." *MHC Surgical Ctr. Assocs., Inc. v. State Office of Medicaid Policy & Planning*, 699 N.E.2d 306, 309 (Ind.Ct.App.1998). "An agreement that the balance is correct may be inferred from delivery of the statement and the account debtor's failure to object to the amount of the statement within a reasonable time." *Auffenberg v. Bd. of Trs. of Columbus Reg'l Hosp.*, 646 N.E.2d 328, 331 (Ind.Ct.App.1995). "The amount of the statement, while not conclusive is prima facie proof of the amount owed on the account." *Id.* "Once a prima facie case is made on an account stated, the burden of proof shifts to the account debtor to prove that the amount claimed is incorrect." *Id.*

Here, PBE established at trial that it was initially retained by Britt, on behalf of Three Amigos, to perform the design and build of a studio for the Three Amigos' radio station. The terms of the retainer agreement entered into later was $600.00 per month for labor related to the normal wear and tear of radio station equipment, but excluded acts of God, vandalism, and user-related problems, which were billed directly at an hourly rate depending upon the manner of work performed and the skill level of the PBE employee performing the work. The bills were sent via e-mail or dropped off in person to Three Amigos. Peters testified at trial that Three Amigos never objected to the invoices submitted by PBE.

Peters further testified that at the time PBE was contacted about performing repairs to the transmitter, which were caused by a lightning strike, Three Amigos owed PBE approximately $14,651.45 for past work performed and retainer fees with an interest rate of 1.5% per month or 18% per annum on any unpaid balance, plus the expense of any action to collect payment. A separate invoice was issued to Three Amigos by PBE for the work performed relating to the lightning strike. That invoice was for $26,312.00, the amount of PBE's estimate for the work.

Kotsopoulos attempts to undermine the trial court's findings and conclusions by pointing out inconsistencies in the dates work was alleged to be performed by PBE for him and Three Amigos. He does so by reference to affidavits submitted by him and the insurance adjuster in support of his unsuccessful motion for relief from judgment. He also refers to the testimony of Case, a direct competitor of PBE, in which he opines that PBE did not perform the work billed to Three Amigos. Those

discrepancies go to the weight of the evidence and to the credibility of the witnesses, matters we do not consider upon appeal. *Collins v. State*, 540 N.E.2d 85, 88 (Ind.Ct.App.1989). The side deal, discussed by Peter and Kotsopoulos regarding PBE's acceptance of $21,000.00 for the work related to the lightning strike, conditioned on Three Amigos paying off the balance of its account for previous work, all from the insurance proceeds, never came to fruition, because Three Amigos did not pay the past due balance prior to the issuance of the insurance check. The trial court's findings are supported by the evidence and those findings, in turn, support the trial court's conclusions thereon and judgment regarding the account stated and due.

 Kotsopoulos also contends that the trial court committed reversible error by reaching the determination that Kotsopoulos forged Peters' signature on the insurance check issued jointly to Three Amigos and PBE. A person who knowingly or intentionally exerts unauthorized control over property of another person commits criminal conversion. Ind. Code § 35–43–4–3. A person suffering a pecuniary loss as a result of criminal conversion is permitted to bring a civil action to recover the loss. *Sam & Mac, Inc. v. Treat*, 783 N.E.2d 760, 766 (Ind.Ct.App.2003). Unlike in a criminal trial, a claimant need prove by only a preponderance of the evidence that the defendant committed the criminal act; a criminal conviction of conversion is not a condition precedent to recovery in the civil action. *Id.* Indiana Code section 34–24–3–1 provides for the recovery of treble damages, costs, and reasonable attorney's fees related to that loss.

In support of PBE's claim here, Peters testified that in January 2009, PBE received a 1099 Statement for Recipient of Miscellaneous Income from Auto–Owners Insurance Company in the amount of $39,800.00. Because Peters did not know where the money came from, he called Auto–Owners and received a faxed copy of the insurance check, which had been issued in May 2008, to both PBE and Three Amigos, in the amount of $39,800.00. When Peters examined the endorsement on the check, he discovered that his signature had been forged.

Peters went to the bank and executed a Forged Signature Affidavit on February 23, 2009. Peters stated in that affidavit that he never received any benefit from or consideration for the check, never received proceeds from the check, and did not present the check for negotiation. Peters testified that he made that representation due to the fact that he was unaware of the source of the $17,000.00 checked issued to him by Three Amigos. He admitted that if the $17,000.00 did come from the proceeds of the insurance check, he did receive some value toward his services.

At trial, Kotsopoulos and Jill Hockenberry ("Hockenberry"), an employee of Three Amigos', testified regarding the endorsement of the check. Hockenberry stated that she witnessed Peters' endorsement of the check in Kotsopoulos' office on June 11, 2008, and that after Peters signed the check he threw it at Kotsopoulos. According to her testimony, she personally took the endorsed check to First Federal Bank that same afternoon. Kotsopoulos testified that Peters was angry when he signed the check, and that he signed the check on the same date it was taken to First Federal, June 12, 2008.

Peters and Till testified that they were out of town on June 12, 2008 working on emergency projects for other clients. Till, as an hourly employee of PBE, was required to complete time sheets. He testified about working with Peters all day, with the exception of one-half hour period

of time during which they were separated in order to test a transmitter and receiver. Although they were in separate locations, but still nearby, they communicated with each other during that time. The work day for Peters and Till ended sometime between 5:00 p.m. and 6:00 p.m.

The trial court, after hearing the evidence, concluded that Hockenberry's and Kotsopoulos' testimony was not credible and that Kotsopoulos had forged Peters' signature on the check. The trial court found that the check was in the possession of Three Amigos' employees at all times until it was deposited in Three Amigos' account at First Federal Bank. Further, the trial court found that Peters' acceptance of $17,000.00 from Three Amigos was consistent with Peters' lack of knowledge of the existence of the insurance check for $39,800.00, when PBE was owed much more from Three Amigos for work performed. The trial court also concluded that the evidence established that Kotsopoulos had committed acts that would constitute conversion, theft, and deception in addition to forgery. Kotsopoulos' arguments here on appeal, are merely requests for this court to reweigh the evidence and reassess the credibility of the witnesses, a task we are forbidden from doing. *Collins,* 540 N.E.2d at 88.

▬▬▬ Furthermore, the computation of damages is a matter within the trial court's discretion. *Harlan Bakeries, Inc. v. Muncy,* 835 N.E.2d 1018, 1034 (Ind.Ct. App.2005). No degree of mathematical certainty is required when awarding damages as long as the amount awarded is supported by evidence in the record. *Id.* We will not disturb a trial court's damages award where the amount is within the range of evidence adduced at trial. *Id.* at 1035.

The trial court's conclusion that Peters and PBE had established that Kotsopoulos had forged the insurance check and had converted the proceeds is supported by evidence in the record, as are the claims that Kotsopoulos and Three Amigos had committed acts that would constitute theft and deception. The trial court acted appropriately within its discretion in its damages award. Further, we find that the trial court correctly awarded PBE attorney fees for pursuing the action. We find no error here.

▬▬▬ Kotsopoulos also claims that the trial court erred by admitting the invoices PBE submitted to Three Amigos for the work it performed, and by allowing PBE's attorneys to testify about reasonable attorney fees. The standard of review for admissibility of evidence issues is abuse of discretion. *Hopper v. Carey,* 716 N.E.2d 566, 570 (Ind.Ct.App.1999). We will reverse the trial court's decision only upon a showing of a manifest abuse of discretion. *Gary Cmty. Sch. Corp. v. Boyd,* 890 N.E.2d 794, 798 (Ind.Ct.App. 2008).

▬▬▬ Kotsopoulos contends that the invoices and statements were improperly authenticated and were unreliable and inaccurate. The invoices were relevant to PBE's claim of account stated and due. Peters testified that PBE sent Three Amigos and Kotsopoulos the same form of invoices throughout the business relationship, and the invoices and statements offered as exhibits were the forms used. PBE used a computer program called "Quickbooks" to perform its billing and accounting. Peters explained that if a past invoice is corrected, the Quickbooks program will alter the start date. He also stated that if an invoice is started and additions are made to it, the date reflected on the invoice might be earlier than the date on which the work was performed. The discrepancies between Peters' testi-

mony and the information reflected in the invoices and statements were thoroughly explored on direct and cross-examination. We find that the trial court did not abuse its discretion in admitting the invoices and statements.

 Kotsopoulos also claims that the trial court erred by allowing PBE's attorneys to testify about their fees and by failing to require the submission of the contingency fee agreement entered into between the attorneys and PBE. Here, attorney fees were recoverable pursuant to the terms of the invoices and statements between PBE and Three Amigos and were recoverable by statute upon the finding of conversion, theft, deception, and forgery. "The amount recoverable for an award of attorney's fees is left to the sound discretion of the trial court." *Franklin Coll. v. Turner*, 844 N.E.2d 99, 105 (Ind.Ct.App. 2006). We will reverse the trial court's award of attorney fees only where we find there has been an abuse of discretion. *Id.* The trial court abuses its discretion when its decision is clearly against the logic and effect of the facts and circumstances before it. *Id.* The amount of the award must be supported by the evidence. *Id.*

Kotsopoulos claims that the trial court's award of attorney fees to PBE is not supported by sufficient evidence because the written contingency fee agreement between PBE and the attorneys was not admitted in evidence. We disagree.

 "Contingency fee agreements may not be used as the basis for determining the reasonable attorney fee to be paid by a nonparty to that fee agreement." *Mason v. Mason*, 561 N.E.2d 809, 811 (Ind.Ct.App.1990). It is inappropriate to award attorney fees based upon a contingency fee contract "because such arrangements are susceptible to abuse." *Id.* "The determination of the reasonableness of an attorney's fee requires consideration of all

relevant circumstances, including the attorney's experience, ability, and reputation, the nature of the employment, the responsibility involved, and the results obtained." *Id.*

 Here, PBE's attorney testified that there was a contingency fee contract between PBE and the attorney for thirty-three percent of the gross amount of recovery. He also testified about the hourly rate he charged for his services, the hourly rate his associate charged, and about the range of fees charged by attorneys in Fort Wayne, Indiana. PBE's attorneys also offered into evidence a "work in progress report," a report generated by the law firm to track hours spent by the attorneys working on each case, for the work performed on behalf of PBE. We conclude that there was sufficient evidence upon which the trial court could base its award of attorney fees and find no abuse of discretion here.

Kotsopoulos also argues that the trial court erred by failing to set off from the damages award the amount PBE received from First Federal Bank in the settlement agreement and assignment of claims between PBE and First Federal Bank. PBE received $10,000.00 from First Federal Bank in the settlement agreement. PBE also received an assignment of claims allowing it to pursue First Federal Bank's claims against Three Amigos and Kotsopoulos, including indemnity for the amount it paid in settlement. We find no error here.

 Kotsopoulos contends that the trial court erred by finding against him and Three Amigos on the counterclaim for fraudulent and false repairs. The trial court specifically found Case's testimony not credible. The trial court noted that Case was a direct competitor of PBE. Further, although Case testified that he exam-

ined the modules and could find no evidence of damage to them from lightning, that testimony did not support a claim for fraudulent or false repairs. Case examined them after PBE had made the repairs. The fact that no damage was evident tended to support PBE's argument that successful repairs had been made, not that Kotsopoulos and Three Amigos had been erroneously billed for unnecessary work. The balance of Kotsopoulos' argument on this issue amounts to a request that we reweigh the evidence, a task we will not undertake. *Collins*, 540 N.E.2d at 88. We find no error here.

PBE concedes that Kotsopoulos is not individually liable for Three Amigos' accounts, and asks that the matter be remanded to the trial court to amend the judgment, *nunc pro tunc*, to reflect that concession. We remand this case to the trial court for the sole purpose of amending the judgment by removing Kotsopoulos' individual liability for the judgment.

Affirmed and remanded.

BAKER, J., and BROWN, J., concur.