Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 26 2012, 9:44 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**SHANA D. TESNAR**
Noblesville, Indiana

ATTORNEYS FOR APPELLEE:

**SAMUEL R. ROBINSON**
Church, Church, Hittle, & Antrim
Noblesville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| TODD SHIREMAN, | ) | |
| | ) | |
| Appellant/Cross-Appellee, | ) | |
| | ) | |
| vs. | ) | No. 29A04-1201-PL-40 |
| | ) | |
| TODD HENSLEY and JERRY McKAY | ) | |
| d/b/a H&M CATTLE COMPANY | ) | |
| | ) | |
| Appellee/Cross-Appellant. | ) | |
| | ) | |

APPEAL FROM THE HAMILTON SUPERIOR COURT
The Honorable Wayne A. Sturtevant, Judge
Cause No. 29D05-0910-PL-2267

**November 26, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

This is a case about the sale of a prize heifer.[1] To our increasingly urbanized population, this might seem to be a trivial matter. But this young cow was sold for a price of $25,000. And when this cow failed to calve, the buyers—Todd Hensley ("Hensley") and Jerry McKay ("McKay") d/b/a H&M Cattle Company ("H&M")— sought recourse against the individual who sold them the heifer, Brad Simmermon ("Simmermon"), and the original breeder, Todd Shireman ("Shireman"). When Hensley and McKay's suit against Shireman was unsuccessful, Shireman sought to recover attorney fees under the general recovery statute. The trial court denied Shireman's request for attorney fees under the general recovery statute, but granted Shireman's request for attorney fees as a sanction for discovery violations. Unhappy with this partial victory, Shireman now appeals, claiming that the trial court should have awarded him attorney fees under the general recovery statute. Hensley and McKay cross-appeal, claiming that the trial court's award of attorney fees as a sanction for discovery violations was improperly large.

We affirm the trial court in all respects.

### Facts and Procedural History

In the fall of 2006, Hensley and McKay became interested in purchasing a "foundation cow"—a cow they could promote and one that would help them breed better cattle. They learned that Shireman had a heifer named "Famous Lady." Hensley and McKay were interested in viewing and potentially purchasing Famous Lady, and they

---

[1] A heifer is "a young female cow that has not borne a calf." Oxford Dictionaries Online, available at: http://oxforddictionaries.com/definition/american_english/heifer.

viewed the heifer on Shireman's property. When Hensley and McKay indicated that they were interested in purchasing Famous Lady, Shireman informed them to deal with Simmermon and Jared Jarck ("Jarck").

On October 7, 2006, Hensley wrote a check payable to Simmermon in the amount of $25,000 for the purchase of Famous Lady. After the purchase, in November 2006, Shireman sent Famous Lady's American Chianina Association[2] ("ACA") registration certificate to Hensley and McKay. This certificate listed "Shireman & Sons"[3] as the previous owner of Famous Lady. The registration listed Kale Hensley, Hensley's son, as the new owner of Famous Lady. Kale was active in showing cattle in 4-H shows, and Hensley thought registering Famous Lady with his son would better promote the heifer. H&M, however, paid for the feeding, boarding, and care of Famous Lady, and made all decisions regarding the attempts at breeding the heifer.

When H&M attempted to enter Famous Lady in the ACA National Championship show in Louisville, Kentucky, they discovered that they were unable to do so because the show required entries to have been bred, whereas Famous Lady had not yet been bred. H&M attempted numerous times to breed Famous Lady, including through use of artificial insemination, but all of the attempts failed. Shireman even retook possession of Famous Lady and unsuccessfully attempted to breed her from November 2007 until May 2008. Hensley retook possession of the heifer in May 2008. Hensley asked Shireman to

---

[2] "Chianina" is the name for "a very large white breed of cattle, kept for its lean meat." Oxford Dictionaries Online, available at: http://oxforddictionaries.com/definition/english/Chianina.

[3] Shireman did business as Shireman & Sons.

3

take Famous Lady in exchange for a refund of his purchase price. Shireman told him to speak with Simmermon. H&M, however, never received a refund from Simmermon.

On October 16, 2009, Hensley and McKay filed a breach of contract claim against Simmermon, claiming that Famous Lady was defective because she was unable to breed, and that Simmermon had breached an oral contract and the implied warranty of fitness for a particular purpose. On December 17, 2009, Hensley and McKay amended their complaint to add Shireman as a defendant. On February 16, 2010, Shireman filed a reply and counterclaim seeking attorney fees pursuant to Indiana Code section 34-52-1-1, claiming that Hensley and McKay's claim was frivolous and in bad faith. Shireman filed a motion for judgment on the pleadings on March 30, 2010, but the trial court denied this motion. Shireman then filed a motion for summary judgment on June 25, 2010, but the trial court ultimately denied summary judgment. Undeterred, Shireman filed a motion to correct error and a "supplemental" motion for summary judgment, both of which the trial court denied. On December 6, 2010, Hensley and McKay dismissed Simmermon as a defendant. Shireman also filed a request for sanctions as a result of Hensley and McKay's discovery violations.

A bench trial took place on November 29, 2011. After Hensley and McKay rested their case, Shireman moved for judgment on the evidence. The trial court granted this motion, and entered judgment in Shireman's favor on Hensley and McKay's claim of breach of contract, concluding that the plaintiffs had failed in their burden to show the existence of a contract between themselves and Shireman.

4

After his motion for judgment on the pleadings was granted, Shireman presented evidence in support of his counterclaim and his motion for sanctions related to discovery violations. In total, Shireman sought $70,000 in attorney fees plus $2,158.70 in costs. The trial court took this matter under advisement and, on December 22, 2011, entered an order denying Shireman's counterclaim. In its order, the trial court found that although Hensley and McKay's litigation may have raised an inference of bad faith, neither of the plaintiffs "brought their action nor continued to litigate their action in bad faith." Appellant's App. p. 23. The trial court also found that Hensley and McKay's claim was "not frivolous, unreasonable, groundless, nor did it become frivolous, unreasonable, or groundless during the course of litigation." Id. at 25.

In its order denying Shireman's counterclaim, the trial court wrote:

> The key issue driving this case was whether there was a usage of trade whereby the breeder who transfers a heifer to an ultimate purchaser is liable to that purchaser if the heifer fails to produce a calf, dead or alive. The Plaintiffs testified, and the Court has no reason to doubt, that in all of their years of operation within the cattle business, they had operated under a guarantee in such a situation. Their guarantee was that the heifer would either breed or if, after an opportunity for the original seller/breeder to obtain a calf from the heifer and was still unable to do so, that the purchase price would be returned or some other arrangement made for credit. This is not a frivolous issue to consider and litigate given the impact on the industry from either the existence or non-existence of such a guarantee nor was it a groundless or unreasonable position to take based upon their own experience. Ultimately, however, the Court found that the Plaintiffs' own practice and experience did not bind the Defendant in this case to provide such a guarantee.
> Shireman argues that the Plaintiffs' position became untenable and therefore frivolous when they were unable to produce any witness, any document, any expert in the field, any other knowledgeable person in the cattle industry, and/or any association standards that supported their position. The Court has struggled with this. What concerns the Court the most in this regard is that the Plaintiffs continued, even up to the eve of trial,

5

to maintain that they would be able to produce other evidence in support of their position. The fact that they went to trial without any such evidence raises an inference of bad faith and raises the question as to at what point the Plaintiffs realized they had no outside support and to question whether they continued the litigation in bad faith from that point on. Regardless of this, the Court finds that the Plaintiffs were entitled to proceed and attempt to prevail solely on the testimony of Mr. Hensley and Mr. McKay and to require the Court to weigh all the evidence, including the credibility of the parties. This is the reason the Court is ruling in favor of Plaintiffs on Defendant's counterclaim.

Having made the findings above, however, the Court takes a different view on the question of sanctions for Plaintiffs' discovery violations. Perhaps much of the course of this case would not have changed if the Plaintiffs had admitted in response to Defendant's Request for Admissions that they had only their testimony to support their position. The Court does agree however that the Plaintiffs' failure to do so did result in the Defendant incurring additional attorney' fees for discovery efforts that would not have been otherwise necessary. Defendant was forced to seek out, interview, and depose other witnesses to counter not just Plaintiffs' testimony, but an unknown potential array of supporting witnesses. In addition to a motion to compel and request for sanctions, Defendant filed a Supplemental Motion for Summary Judgment to, as he states, "flush out" the facts and witnesses Plaintiffs would call. Additional efforts are detailed in the Defendant's Reply to Plaintiffs' Response to Discovery Problems filed on December 6th and specifically found in paragraph 14 of that pleading. The Court finds that all matters A through I encompass reasonable discovery techniques that the Defendant used to try to pin down or prepare to defend against the Plaintiffs' case if that case was to be supported by witnesses and evidence beyond the testimony of the Plaintiffs themselves. Compare that list to the Affidavit of Raymond M. Adler, which is in evidence as Defendant's Exhibit C, the Court finds support for nearly $19,000 that could reasonably be claimed to have been expended in attorney's fees on those matters listed in A through G. A listing of the expenses found by the Court in that comparison is attached as Exhibit 1. The Court could find no entries regarding paragraph H, and Defendant's Exhibit C was filed prior to expenses incurred for item I.

The Court finds that the Plaintiffs failed to fully cooperate in discovery and that thereby the Defendant incurred expenses, particularly on Plaintiffs' failure to admit the truth of the extent of the support they had for their case. Therefore, sanctions are warranted under Trial Rules 37(b) and 37(c). The Court determines that the Defendant's request for an award of attorney's fees in the amount of $15,000 is reasonable in light of the above and that the Defendant incurred a total of $70,000 in attorney fees to defend this

6

action. The Court now orders Plaintiffs to pay to Defendant's attorney, Raymond M. Adler, the amount of $15,000, and this amount is ordered entered as a civil judgment in favor of Mr. Adler and against the Plaintiffs jointly and severally.

Appellant's App. pp. 24-26.

Shireman filed a motion to correct error on December 28, 2011, which the trial court denied on January 4, 2012. On January 19, 2012, Hensley and McKay filed a motion to correct error, which the trial court denied on January 26, 2012. Shireman now appeals, and Hensley and McKay cross-appeal.

## Discussion and Decision

Shireman claims that the trial court erred in denying his counterclaim for attorney fees. Indiana follows the "American Rule," whereby parties are required to pay their own attorney fees absent an agreement between the parties, statutory authority, or other rule to the contrary. Lockett v. Hoskins, 960 N.E.2d 850, 852 (Ind. Ct. App. 2012). Shireman based his counterclaim for attorney fees on Indiana Code section 34-52-1-1, also referred to as the "general recovery statute,"[4] which provides in relevant part:

(a) In all civil actions, the party recovering judgment shall recover costs, except in those cases in which a different provision is made by law.

(b) In any civil action, the court may award attorney's fees as part of the cost to the prevailing party, if the court finds that either party:
(1) brought the action or defense on a claim or defense that is frivolous, unreasonable, or groundless;
(2) continued to litigate the action or defense after the party's claim or defense clearly became frivolous, unreasonable, or groundless; or
(3) litigated the action in bad faith.

---

[4] See Van Winkle v. Nash, 761 N.E.2d 856, 861 (Ind. Ct. App. 2002).

Appellate review of the trial court's award of attorney's fees pursuant to this section proceeds in three steps: (1) we review the trial court's findings of fact under a clearly erroneous standard; (2) we review the trial court's legal conclusions *de novo*; and (3) we review the trial court's decision to award fees and the amount thereof under an abuse of discretion standard. Lockett, 690 N.E.2d at 852-53.

A claim or defense is unreasonable if, based on a totality of the circumstances, including the law and facts known at the time of the filing, no reasonable attorney would consider that the claim or defense was worthy of litigation or justified. Id. at 853. A claim is frivolous if: it is made primarily for the purpose of harassing or maliciously injuring a person; the lawyer does not make a good faith and rational argument on the merits of the action; or the lawyer does not support the action taken by a good faith and rational argument for an extension, modification, or reversal of existing law. Id. A claim is groundless only if no facts exist which support a legal claim presented by the losing party. Id.

Moreover, Shireman, as the party requesting the assessment of attorney fees, had the burden of proof at trial. Chrysler Motor Corp. v. Resheter, 637 N.E.2d 837, 838 (Ind. Ct. App. 1994). Because the trial court denied Shireman's request, he appeals from a negative judgment. We will reverse a negative judgment only where the trial court's decision is contrary to law. Kotsopoulos v. Peters Broad. Eng'g, Inc., 962 N.E.2d 97, 105 (Ind. Ct. App. 2011). In considering whether the trial court's decision is contrary to law, we determine if the undisputed evidence and all reasonable inferences to be drawn

8

from that evidence lead to but one conclusion, and the trial court has reached a different conclusion. Id.

Shireman first claims that the trial court erred in finding that Hensley and McKay were entitled to pursue their claim against Shireman based solely on their "absurd and contradictory testimony," and that their failure to produce any other evidence to support their claims necessarily means that their claim was brought in bad faith. We are unable to agree.

Both Hensley and McKay testified as to their extensive experience in the cattle industry. Hensley explained that he had grown up on a cattle farm and had raised cattle for over twenty years. He testified that he studied animal science at Oklahoma State University, was involved in the FFA and 4-H, and was a judge at Oklahoma State's national champion team for livestock judging in 1990. He also stated that he had purchased many heifers over the years. He and McKay had been partners in H&M for approximately ten years. McKay testified that he had been in the cattle business for forty years and had also bred and purchased many heifers. Both Hensley and McKay testified that, based on their experience, it was customary for a breeder to "stand by" his cattle that were sold for breeding purposes. That is, if a purchased heifer was unable to breed, the original owner would either refund the purchase price or give the purchaser credit toward the purchase of another cow in order to "make it right." Tr. p. 29. They further testified that Shireman himself attempted to help them breed Famous Lady, but that he too was unsuccessful.

9

Certainly, the Plaintiffs' case would have been stronger had they been able to present evidence from third parties, and Shireman presented depositions and affidavits from several witnesses contradicting Hensley's and McKay's testimony regarding a guarantee that a heifer would successfully be able to breed. But we do not think that this necessarily means that Hensley's and McKay's claim was frivolous, unreasonable, groundless or litigated in bad faith. Shireman's argument in this regard is essentially that we reweigh the evidence and independently consider Hensley's and McKay's credibility and motives. This we will not do.

Shireman also claims that Hensley and McKay knew that they would not be able to recover any damages. Shireman notes that McKay testified that the claimed guarantee that a heifer would be able to breed would be satisfied even if the heifer bore a dead calf, and admitted that a dead calf was worthless. Shireman therefore claims that McKay acknowledged that there could be no award of damages. We again disagree. Despite McKay's testimony regarding the worthlessness of a dead calf, there was no evidence presented that Famous Lady bore any calf—dead or alive. Thus, according to Hensley's and McKay's alleged customary guarantee, they would still be entitled to a refund or credit for the purchase price of Famous Lady because she was unable to breed.

Shireman further claims that Hensley and McKay's claim was, by definition, groundless because the trial court found that they failed to prove the existence of a contract between themselves and Shireman. Specifically, Shireman focuses on the trial court's statement from the bench in which the court stated, "Where is the proof of a contract? There is no proof in my mind. The Plaintiffs have not met their burden of

10

establishing a contract here. I see no basis for recovery, so I am granting a judgment on the evidence in favor of Mr. Shireman." Tr. p. 189. However, Hensley and McKay both testified that Shireman had told them that if he was unable to get Famous Lady to breed then he would return the purchase price. Tr. pp. 54, 108. The fact that the trial court found this testimony insufficient to support Hensley and McKay's claims does not mean that the plaintiffs proceeded with a total lack of proof; their testimony, even if not wholly credited by the trial court, was some proof.[5] Thus, we cannot say that the trial court clearly erred in finding that the claims against Shireman were *not* groundless.

Shireman next claims that the trial court erred in failing to conclude that Hensley and McKay litigated in bad faith. However, the existence of bad faith is a factual question for the trial court to resolve. See Hoosier Ins. Co. v. Audiology Found. of Am., 745 N.E.2d 300, 311 (Ind. Ct. App. 2001) (noting that it is not the role of an appellate court to determine whether a party acted in bad faith). We will not second-guess the trial court's factual determination of bad faith on appeal. Shireman lists in detail all of the evidence he claims supports a finding of bad faith. Certainly, much of the evidence referred to by Shireman might have supported a finding by the trial court that Hensley and McKay litigated in bad faith, if the trial court had found bad faith. But the trial court did not find bad faith on the part of the plaintiffs, and we decline Shireman's request to reweigh the evidence and come to a contrary conclusion.[6]

---

[5] Indeed, we note that the trial court denied Shireman's motions for summary judgment, noting that there was some evidence creating a genuine issue of material fact for trial.

[6] In support of his claim that Hensley and McKay litigated in bad faith, Shireman claims that venue was improper because, after Simmermon was dismissed as a defendant, none of the remaining parties resided in Hamilton County, nor did the sales transaction take place there. Shireman cites no authority for his

11

**Cross-Appeal**

Hensley and McKay cross-appeal, claiming that the trial court's award of attorney fees as a sanction for discovery violations was improper. Indiana Trial Rule 37(B)(2) provides that a trial court may order various sanctions against a party who "fails to obey an order to provide or permit discovery[.]" After listing the various sanctions allowed, Trial Rule 37(B)(2) provides that:

> In lieu of any of the foregoing orders or in addition thereto, the court shall require the party failing to obey the order or the attorney advising him or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

The selection of an appropriate sanction for discovery violations is a matter within the trial court's sound discretion. Whitaker v. Becker, 960 N.E.2d 111, 115 (Ind. 2012). Trial courts "stand much closer than an appellate court to the currents of litigation pending before them, and they have a correspondingly better sense of which sanctions will adequately protect the litigants in any given case, without going overboard, while still discouraging gamesmanship in future litigation." Id. On appeal, we review a trial court's sanction only for an abuse of its discretion. Id.

Hensley and McKay do not object to the trial court's order awarding sanctions *per se*, but they do claim that the amount awarded was improper. Specifically they take issue with the trial court's inclusion of attorney fees that were related to Shireman's Motion to Strike Testimony of Plaintiffs and his Supplemental Motion for Partial Summary

---

claim that venue was improper, and this claim is therefore waived. See Loomis v. Ameritech Corp., 764 N.E.2d 658, 668 (Ind. Ct. App. 2002) (noting that failure to cite authority in support of appellate argument results in waiver) (citing Ind. Appellate Rule 46(A)(8)(a)).

Judgment and Designation of Evidentiary Matters, and Alternative Motion to Exclude Unproduced Documentation and Expert Testimony. With regard to the first of these motions, the trial court specifically noted that Shireman's Motion to Strike Testimony was one of his "reasonable techniques" to "try to pin down or prepare to defend" against the claims brought against him in light of the Plaintiffs' failure to fully cooperate in discovery. Appellant's App. pp. 25, 281. The same is true with regard to Shireman's Supplemental Motion for Summary Judgment. The trial court specifically noted that Shireman used this motion to "'flush out' the facts and witnesses the Plaintiffs would call." Id. at 25. Under our deferential standard of review, we cannot say that the trial court abused its discretion in awarding attorney fees to Shireman related to the preparation of these motions, which the trial court specifically found were due to the Plaintiffs' failure to fully comply with discovery.

Affirmed.

VAIDIK, J., and BARNES, J., concur.