## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jul 13 2017, 5:57 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANTS

Glen E. Koch II
Boren, Oliver & Coffey, LLP
Martinsville, Indiana

ATTORNEY FOR APPELLEE

Jamie E. Harrell
Helfrich & Harrell Law
Avon, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

T.H. and R.H.,

*Appellants-Petitioners,*

v.

C.J.,

*Appellee-Intervenor.*

July 13, 2017

Court of Appeals Case No.
32A01-1611-AD-2712

Appeal from the Hendricks
Superior Court

The Honorable Robert W. Freese,
Judge

Trial Court Cause No.
32D01-1605-AD-29

**Najam, Judge.**

## Statement of the Case

[1]     T.H. and R.H. ("Guardians") appeal from the trial court's denial of their petition to adopt minor child J.M.L. ("Child") following an evidentiary

hearing. Guardians raise a single issue for our review, which we restate as whether the trial court's judgment that the consent of Child's biological father, C.J. ("Father"), was necessary to the adoption petition is contrary to law. We affirm.

## Facts and Procedural History

[2] Child was born in December of 2010. Shortly after his birth, his mother died. Father and Mother were dating and living together at the time but not married. Father petitioned to be named Child's guardian, which the trial court granted. But Father did not establish his paternity at that time.

[3] Father, who is trained as an automobile mechanic, was unemployed at the time of Child's birth. However, due to the death of Child's mother, Father began receiving Social Security benefits on Child's behalf. And, around April of 2011, Father obtained part-time employment. He and Child also began to live with Father's biological mother and Father's step-father, the Guardians.

[4] In January of 2012, Father moved to Nevada and asked his mother and step-father to care for Child. In February of 2012, Guardians petitioned to be appointed as the Child's successor guardians, in that Child continued to live with them while Father was in Nevada, they began to receive the Social Security benefits on Child's behalf, and they otherwise provided necessary care for Child. The court granted Guardians' request.

[5] In March, Father returned to Indiana. Over approximately the next year and one-half, Father's employment and living situation were unstable. In

September or October of 2013, Father moved back into Guardians' home with Child. He paid $50 per week to Guardians as rent and obtained regular employment at a nearby grocery store. Father also contributed groceries to the household, provided car maintenance, and would occasionally purchase gifts for Child. Later, Father obtained employment at Goodyear, and from that position he contributed more than $1,000 from his income to repair the transmission on one of Guardians' vehicles.

[6] In 2014, Father married F.J. Father and F.J. moved into their own residence and they had a child together. Thereafter, Father obtained employment at Big O' Tires, and his 2015 joint tax return showed a household income of $59,358. Father increased his overnights with Child and, in May of 2016, filed his petition to establish paternity and custody. Later that month, Guardians filed a petition to adopt and asserted that Father's consent to the adoption was not necessary because Father "has abandoned his son, does not support his son, . . . has not had any contact with him for several months, and has not had a meaningful relationship with him since birth." Appellants' App. Vol. 2 at 9.

[7] Father intervened in Guardians' adoption request. After an evidentiary hearing, the court entered the following findings of fact and conclusions thereon:

> 1. Intervenor . . . is the father of [Child] . . . pursuant to Agreements and Orders of the Court entered in the related [paternity] action . . . .

2.      Father's consent to a petition to adopt is required pursuant to Indiana Code § 31-19-9-1(a)(1).

3.      Father's consent may not be waived pursuant to I.C. § 31-19-[9]-8(a)(2)(A), as Father has communicated significantly with [C]hild throughout . . . his lifetime.

4.      For [Guardians] to proceed . . . without Father's consent . . . [they] must show by "clear and convincing evidence" that Father's consent was not required because he . . . knowingly failed to provide for the care and support of the child when able to do so as required by law or judicial decree.

5.      A parent's ability to provide for the care and support of [his] child depends on more than proof of income, standing alone.  It is determined by an examination of the totality of the circumstances.

6.      Father was [C]hild's guardian until February[] 2012, when [Guardians] were appointed as Successor Guardians.

7.      Father's housing and employment were unstable during 2012-2013 and he did not have the ability to support [C]hild.

8.      Father lived with [Guardians] between 2013 and 2014[] and regularly provided both care for [C]hild[] as well as some financial support in the form of rent paid to [Guardians], providing groceries, and other various contributions.  During this time, Father was earning minimum wage working at a local grocery store and he testified that he did not have a bank account.

9.      During 2015 and 2016, Father exercised regular parenting time with [C]hild and not only provided care . . . but paid

transferred expenses, including the cost of food and transportation, and duplicated expenses, including the cost of providing shelter.

10. [Guardians] offered little to no evidence as to the amount of income Father earned during 2015 and 2016, or his ability to pay regular support payments during that time.

11. [Guardians] offered no evidence showing that [C]hild's needs were unmet at any time relevant to these proceedings[.]

12. Father has been employed during 2015 and 2016 at Big O' Tires and now earns $11.00 per hour. His average gross weekly income for 2016 is currently $710.46.

13. Since their appointment as Successor Guardians, [Guardians] have received [C]hild's Social Security survivor benefits in the amount of $766.00 per month . . . . These are benefits that would have been received by Father had [C]hild been in his care and custody after February 2012. Those benefits were diverted from Father to [Guardians] to assist with [C]hild's financial support.

14. [Guardians] offered no evidence of the amount that was necessary on a monthly or weekly basis for the support of [C]hild after February 2012, and the Court cannot determine whether [C]hild's support was fully covered by the [S]ocial [S]ecurity benefits . . . .

15. [Guardians] have not met their burden to show by clear and convincing evidence that Father knowingly failed to provide for the care and support of [C]hild when able to do so as required by law or judicial decree.

16. For the foregoing reasons, the Court finds that Father's consent to the Petition for Adoption is required . . . .

17. [Guardians] Petition for Adoption is dismissed.

*Id.* at 15-17 (citations and footnotes omitted). This appeal ensued.

# Discussion and Decision

[8] Guardians appeal the trial court's dismissal of the petition for adoption. The trial court's judgment against Guardians followed an evidentiary hearing at which, as the trial court stated, Guardians bore the burden of proof by clear and convincing evidence. *M.W. v. A.W. (In re N.W.)*, 933 N.E.2d 909, 913 (Ind. Ct. App. 2010), *adopted*, 941 N.E.2d 1042 (Ind. 2011). Specifically, to show that Father's consent to the adoption was not necessary, Guardians were required to clear two hurdles: they were required to show that Father "knowingly fail[ed] to provide for the care and support of the child when able to do so as required by law or judicial decree," and they were also required to show that "the adoption requested is in the best interests of the child." Ind. Code §§ 31-19-9-8(a)(2)(B); -11-1(a)(1) (2016). However, the parties agreed to bifurcate the issues before the trial court such that the court would first consider only whether Father knowingly failed to provide for Child's care and support when he was able to provide that support before it considered Child's best interests. And because the court concluded that Father did not knowingly fail to provide Child's care and support when able, the court dismissed Guardians' petition in its judgment.

[9] The trial court expressly concluded that Guardians "have not met their burden to show by clear and convincing evidence that Father knowingly failed to provide for the care and support of the child when able to do so as required by law or judicial decree." Appellants' App. Vol. 2 at 17. Having failed to meet their burden of proof in the trial court, Guardians appeal from a negative judgment. A negative judgment is one entered against a party who bore the burden of proof. *Serenity Springs v. LaPorte Cty. Convention & Visitors Bureau*, 986 N.E.2d 314, 319 (Ind. Ct. App. 2013). On appeal, we will reverse a negative judgment only where the trial court's decision is contrary to law. *Kotsopoulos v. Peters Broad. Eng'g, Inc.*, 962 N.E.2d 97, 105 (Ind. Ct. App. 2011). A trial court's judgment is contrary to law if the undisputed evidence and all reasonable inferences to be drawn from that evidence lead to but one conclusion, and the trial court reached a different conclusion. *Id.* Additionally, a judgment is contrary to law if the trial court applied the wrong legal standard. *Town of Fortville v. Certain Fortville Annexation Territory Landowners*, 51 N.E.3d 1195, 1198 (Ind. 2016).

[10] On appeal, Guardians assert that the trial court's judgment is contrary to law because Father "never paid child support" between January 2012 and September 2013 or between February 2014 and May 2016. Appellants' Br. at 7. In particular, Guardians assert that the court erred in three of its findings, namely, (1) when it found that Father was unable to financially support Child in 2012 and 2013; (2) when it found that Father did provide some support in

2015 and 2016; and (3) when it found that "insufficient evidence had been entered of Father's 2015 income." *Id.* at 8. We cannot agree.

[11] There is more in the record than the Guardians acknowledge on appeal, and each of the trial court's three challenged findings are supported by the totality of the evidence before the court. First, Father testified that he was transient and not stably employed between January of 2012 and September or October of 2013. Those facts support the trial court's finding that Father was unable to support Child financially during that time.

[12] Second, Father testified that he regularly exercised—when Guardians allowed it—parenting time with Child in 2015 and 2016, and that he provided Child with clothing, holiday gifts, and Child's own room at Father's house. Father also noted the positive relationship Child had developed with Father's wife, F.J., and their child when he introduced photographs of the four to the court. Contrary to Guardians' supposition on appeal, support need not be exclusively financial. *Je. B. v. Ja. B. (In re M.B.)*, 944 N.E.2d 73, 77 (Ind. Ct. App. 2011) ("A parent's nonmonetary contribution to a child's care may be counted as support."). The trial court's finding that Father supported Child in 2015 and 2016 is demonstrated in the record.

[13] Third, the trial court's assessment that Guardians had produced "little to no evidence" of Father's ability to pay regular support payments in 2015 and 2016 is correct. Appellants' App. Vol. 2 at 16-17. The evidence demonstrates Father's joint gross income in 2015, but there is no evidence regarding Father's

expenses, what a reasonable amount of support for Child would have been, or, significantly, that Child's Social Security benefits did not provide a reasonable amount of support already. Moreover, Father's testimony that he thought he earned about $70,000 in 2015 was in conflict with his 2015 joint tax return, and it was the trial court's prerogative to rely on the tax return in its judgment.

[14] Guardians' arguments on appeal select evidence from the record and ask this court to rely on that evidence to the exclusion of the evidence most favorable to the trial court's judgment, which we will not do. Likewise, the case law primarily relied on by Guardians discusses evidence relied on by our trial courts in finding parental consent not to be necessary. *See, e.g.*, *C.L.S. v. A.L.S. (In re M.S.)*, 10 N.E.3d 1272, 1280-82 (Ind. Ct. App. 2014). Here, on the other hand, the trial court found that Father's consent to the adoption was necessary. Accordingly, the cases relied on by Guardians are inapposite to this appeal.

[15] In sum, we cannot say that the evidence before the trial court leads unerringly to one conclusion and that the trial court reached a different conclusion. The trial court's judgment is not contrary to law, and, as such, we affirm.

[16] Affirmed.

Riley, J., and Bradford, J., concur.